IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SHARIFF BUTLER and JEREMEY MELVIN         :
    Plaintiffs,                         :
                              :
                              :
      V.                                  :
                              :
JOHN E. WETZEL, Secretary of Department  :
Of Corrections,                          :
SHIRLEY MOORE SMEAL, Executive Duputy of :
Department of Corrections,               :
MELISSA ROBERTS, Former DOC Policy       :
Coordinator,                             :
DIANE KASHMERE, Current DOC Policy       :
Coordinator,                             :
TABB BICKELL, Executive Deputy Secretary :
for Institutional Operations,            :
MICHAEL WENEROWICZ, Regional Deputy      :
Secretary,                               :
DORINA VARNER, Chief Grievance Coordinator, :
KERI MOORE, Assistant Chief Grievance    :
Coordinator,                             :
KEVIN KAUFFMAN, Superintendent at SCI    :
Huntingdon,                              :
LONNIE OLIVER, Former Deputy Superintendant :
for Facilities Management at SCI Huntingdon,:
JOHN THOMAS, Former Deputy Superintendant :
for Centralized Servoces at SCI Huntingdon, :
BYRON BRUMBAUGH, Current Deputy          :
Superintendant for Facilities Management at :
SCI Huntingdon                           :
WILLIAM SCOTT WALTERS, Current Deputy    :
Superintendent for Centralized Services at :
SCI Huntingdon,                          :
BRIAN HARRIS, Captain/Shift Commander at SCI:
Huntigdon,                               :
MANDY SIPPLE, Former Major of Unit Manage- :
ment at SCI Huntingdon,                  :
ANTHONY EBERLING, Security Lieutanant at :
SCI Huntingdon,                          :
BRUCE EWELL, Facility  Maintenance Manager :
III at SCI Huntingdon,                   :
CONSTANCE GREEN, Superintendent's Assistant/:
Grievance Coordinator at SCI Huntingdon  :
ROBERT BILGER, Safety Manager at SCI     :
Huntingdon,                              :
PAULA PRICE, Health Care Administrator at :
SCI Huntingdon,                          :
MICHELLE HARKER, Nurse Supervisor at SCI :
Huntingdon,                              :
ANDREA WAKEFIELD, Records Supervisor at SCI :
Huntingdon,                              :
GEORGE RALSTON, Unit Manager at SCI      :
Huntingdon,                              :

                         :

**FILED**
**SCRANTON**

DEC 2 0 2019

Per_____
        **DEPUTY CLERK**

4:19-CV- 2171

COMPLAINT
Civil Action No._____

ALLEN STRATTON, Unit Counselor at SCI    :
Huntingdon,    :
JOHN BARR, Correctional Officer at SCI    :
Huntingdon,    :
   :
   :
J. REED, Correctional Officer at SCI    :
Huntingdon,    :
T. EMIGH, Correctional Officer at SCI    :
Huntingdon,    :
In their individual and in    :
their official capacities,    :
Defendants,    :

## JURISDICTION AND VENUE

1.  This is a civil action authorized by U.S.C. Section 1983 to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States. The Court has jurisdiction under 28 U.S.C. Section 1331 and 1343 (a)(3). Plaintiffs seek declaratory relief pursuant to 28 U.S.C. section 2201 and 2202. Plaintiffs' claims for injunctive relief are authorized by 28 U.S.C. Section 2283 and 2284 and rule 65 of the Federal Rules of Civil Procedure.

2.  The United States District Court For The Middle District of Pennsylvania is an appropriate venue under 28 U.S.C. Section 1391 (b)(2) because the events giving rise to this action occurred at the State Correctional Institution at Huntingdon (SCI Huntingdon) in Huntingdon County, PA, and at the offices of the Pennsylvania Department of Corrections ("DOC") din Cumberland County, PA.

## PARTIES

3.  Plaintiff Shariff Butler is an adult Male citizen, age 42, who is serving a 27½ to 55 year sentence in the custody of DOC. He is housed at SCI Huntingdon.

4.  Plaintiff Jeremey Melvin is an adult male citizen, age 32, who is serving a 30 to Life sentence in the custody of DOC. He is housed at SCI Huntingdon.

5.  Plaintiffs Shariff Butler and Jeremey Melvin have not filed any previous civil actions and/or claims within any level of courts pursuant to 42 U.S.C. Section 1983.

6.  Defendant John E. Wetzel is secretary of PA DOC. He is administrative head of the department within the state of Pennsylvania. Wetzel oversees DOC's budget, prisons and staff.

2.

He sets the objectives for the department. He guides and participates in development of its policies and procedures. Wetzel has final approval of all DOC policies, and he is responsible for their implementation throughout the PA prisons, operated by DOC. Wetzel is a political appointee. He was confirmed by the senate in May 2011, and he reports to the Governor of the Commonwealth. Wetzel is legally responsible for operation, in their current position, of the Department and each institution under its jurisdiction including SCI Huntingdon where the plaintiffs in this matter are confined.

7.   Defendant Shirley Moore Smeal is Executive Deputy Secretary of PA DOC. She participates in the formulation of Pennsylvania DOC policies and procedures, and she advises Wetzel on the development of DOC policies and procedures. Moor Smeal reports to Wetzel. Moore Smeal is legally responsible for operations, in their current position, of the Department and each institution under its jurisdiction including SCI Huntingdon where plaintiffs in this matter are confined.

8.   Defendant Melissa Roberts was a PA DOC Policy Coordinator until recently. Roberts participated in the formulation of Pennsylvania policies and procedures. Roberts advised Wetzel and Moore Smeal on the development of DOC policies and procedures. Roberts reported to Moore Smeal. Roberts is legally responsible for operations, in their current position, of the DOC and each institution under its jurisdiction including SCI Huntingdon where plaintiffs in this matter are confined.

9.   Defendant Diane Kashmere recently succeeded Melissa Roberts as PA DOC statewide Policy Coordinator. Kashmere participates in the formulation of Pennsylvania DOC policies and procedures. Kashmere reports to Moore Smeal. Kahsmere is legally responsible for operations, in their current position, of the Department and each institution under its jurisdiction including SCI Huntingdon where plaintiffffs in this matter are confined.

10.   Defendant Tabb Bickell is Executive Deputy Secretary for Institutional Operations of DOC. Until recently, he was Regional Deputy Secretary of DOC as RDS, Bickel Participated in the formulation of DOC policies and procedures, and he advises Wetzel on the development of DOC Policy and Procedures. Bickell continues to perform these functions in his current role. Bickell reports to Wetzel. Bickell is legally responsible for operations, in their current position of the Department and each institution under the jurisdiction including Huntingdon where plaintiffs in this matter are confined.

11.   Defendant Michael Wenerowicz is Regional Deputy Secretary for the Eastern Region of DOC. Wenerowicz participates in the formulation of DOC Policies and Procedures. Wenerowicz

advises Wetzel on the development of DOC policies and procedures. Wenerowicz is legally responsible for operations, in their current position, of the Department and each institution under its jurisdiction including SCI Huntingdon where plaintiffs in this matter are confined.

12.     Defendant Dorina Varner is Chief Grievance Coordinator for Secretary's Office of Inmate Grievances and Appeals (Hereinafter "SOIGA") under the Pennsylvania DOC in the Central Region. Varner, as a Management level employee assigned to the Secretary's Office of Inmate Grievances and Appeals by the Secretary, oversees the inmate  grievance and appeal process, trains fields staff, and respond to appeals. Varner operates within the SOIGA office responsible for review and disposition of all appeals to Final review arising under this policy (DC-ADM 804). Varner is legally responsible for operations, in their current position, of the Department and each institution under its jurisdiction including Huntingdon where plaintiffs in this matter are confined.

13.     Defendant Keri Moore is Assistant Chief Grievance Coordinator for Secretary's Office of Inmate Grievance and Appeals under Pennsylvania DOC in the Central Region. Moore participates by assisting Varner at the SOIGA office responsible for review and disposition of all appeals arising under this policy (DC-ADM 804). Moore is legally responsible for operations, in their current position, of the Department and each institution under its jurisdiction including Huntingdon where Plaintiffs in this matter are confined. Moore reports to Varner.

14.     Defendant Kevin Kauffman is Superintendent of SCI-Huntingdon. Kauffman has responsibility for all operations at the SCI-Huntingdon prison. He implements DOC policies and procedure in the local setting. Kauffman is responsible for the welfare of the inmates in that said prison. Kauffman reports to Bickell.

15.     Defendant Lonnie Oliver was Deputy Superintendent for Facilities Management of the PA DOC at SCI-Huntingdon during the time of several incidental claims raised herein until some time in 2018. Oliver Participated as a management level employee directly responsible for the uniform corrections officers, Unit Management (Housing), counseling services, facility maintenance, facility safety, and the facility security all at SCI-Huntingdon. Oliver reported to Kauffman.

16.     Defendant John C. Thomas, Jr., was Deputy Superintendent for Centralized Services (DSCS) for the Pennsylvania DOC at SCI-Huntingdon during the time of several incidental claims raised herein until some time in 2018. Thomas participated as a facility staff member

4.

responsible for coordinating efforts between facility and the Medical Department. As the Facility Manager's representative, he has joint responsibility with the Bureau of Health Care Service to address those issues outlined in its policy, and securing set position at SCI-Huntingdon.

17.     Defendant William Scott Walters was Major of Unit Management under Pa DOC at SCI Huntiungdon during the time of several incidental claims raised herein until early 2018. Walters was responsible for overseeing all supervision conducted by Unit Managers and all other subordinates that make up the Unit Management team responsible with the delivery of security and program services. Walters succeeded J. Thomas as Deputy Superintendent for Centralized Services (DSCS). Walters is currently the (DSCS) facility staff member responsible for coordinating efforts between facility and Medical Department and as the Facility Manager's representative he has joint responsibility with the Bureau of Health Care Service to address those issues outlined in its policy at the institution of SCI-Huntingdon.

18.     Defendant Byron Brumbaugh is the current Deputy Superintendent for Facilities Management (hereinafter "DSFM") under PA DOC at SCI-Huntingdon. As DSFM, Brumbaugh is a management level employee directly responsible for the uniform corrections officers, Unit "Management (housing), counseling services, facility maintenance, facility safety, and the facility Security Office at SCI-Huntingdon.

19.     Defendant Mandy Sipple was a Correctional Officer 5 of the Pennsylvania Department of Corrections who, at all times mentioned in this complaint, held the rank of Major of Unit Management and was assigned to SCI-Huntingdon.

20.     Defendant Anthony Eberling is a Correctional Officer 3 of the Pennsylvania Department of Corrections who, at all times mentioned in this  complaint, held the rank of Lieutenant of Security and was assigned to SCI-Huntingdon.

21.     Defendant Brian Harris is a Correctional Officer 4 of the Pennsylvania Department of Corrections who, at all times mentioned in this complaint, held the rank of Captain and Shift Commander and was assigned to SCI-Huntingdon.

22.     Defendant Bruce Ewell is a Correctional Facility Personnel Member of the Pennsylvania Department of Corrections, who, at all times mentioned in this complaint, held the rank of Facility Maintenance Manager 3 and was assigned to SCI-Huntingdon.

23.     Defendant Constance Green is a Correctional Administrative Staff Member and Facility Personnel Member of the Pennsylvania Department of Correction who, at all times mentioned in this complaint, held the rank of Superintendent Assistant and Grievance Coordinator and was assigned at SCI-Huntingdon.

24.     Defendant Robert Bilger is a Correctional Facilities Management Personnel Staff Member of the Pennsylvania Department of Corrections who, at all times mentioned in this complaint held the rank of Safety Manager and was assigned at SCI-Huntingdon.

25.     Defendant Paula Price is a Correct care Solution Medical Service Member under contract with the Pennsylvania Department of Corrections who, at all times mentioned in this complaint, held the rank of Health Care Administrator and was assigned at SCI-Huntingdon.

26.     Defendant Michele Harker is a Correct Care Solution Medical Service Member under contract with the Pennsylvania Department of Corrections who, at all times mentioned in this complaint, held the rank of Nurse Supervisor and was assigned at SCI-Huntingdon.

27.     Defendant Andrea Wakefield is a Correctional Records Office Personnel Member of the Pennsylvania Department of Corrections who, at all times mentioned in this complaint, held the rank of Records Supervisor and was assigned at SCI-Huntingdon.

28.     Defendant George Ralston is a Correctional Unit Management Personnel Member of the Pennsylvania Department of Corrections who, at all times mentioned in this complaint, held the rank of Unit Manager and was assigned at SCI-Huntingdon.

29.     Defendant Allen Stratton is a Correctional Unit Management Personnel Member of the Pennsylvania Department of Corrections who, at all times mentioned in this complaint, held the rank of Correctional Unit Counselor and was assigned at SCI-Huntingdon.

30.     Defendant John Barr is a Correctional Officer of the Department of Corrections who, at all times mentioned in this complaint, held the rank of Housing Unit Officer (CO1) and was assigned at SCI-Huntingdon.

31.     Defendant J. Reed is a Correctional Officer of the Department of Corrections who, at all times mentioned in this complaint, held the rank of Search Team Officer (CO1) and was assigned at SCI-Huntingdon.

32.     Defendant T. Emigh is a Correctional Officer of the Department of Corrections who, at all times mentioned in this complaint, held the rank of Search Team Officer (CO1) and was assigned at SCI-Huntingdon.

33.    Each defendant was acting under color of state law during the events described herein.

34.    Each defendant is sued in his or her official capacity on the basis of the prison (SCI-Huntingdon) conditions in the events described herein and in his or her individual capacity on the basis of personal involvement in the events described herein.

## FACTS

### Living Conditions

Double-Celling Housing Procedures:

35.    Plaintiff Sheriff Butler wrote to Defendant Allen Stratton (CA-Unit Counselor) by way of Inmate's Request to Staff Member Form (handwritten "request slip") on August 6, 2017 requesting to be processed for a housing classification Program Code A (hereinafer "A-Code") in accordance with DOC Policy DC-ADM 11.2.1., Section 5-Single Cell (C)(1)(f) as Butler met the criteria for said code for a single cell by way of said DOC Policy for Butler has been sentenced to 27½ to 55 year sentence. Refer to 8/6/2017 Request Slip as Exhibit-A.

36.    In accordance with DC-ADM 11.2.1 Sec. 5 (C)(1)(f) it states; "Consider long-term inmates who are serving a sentence of 10 years or more for a single-cell provided the space is available. Those inmates shall be assigned a Program Code A to differentiate them from Program Code Z inmates." Refer to DC-ADM 11.2.1 effective 11/24/14 issued 10/27/2014 as Exhibit-B.

37. Defendant Stratton responded to Butler's request stating in conclusive part; "let me know how you want to proceed"..." Again, please let me know how you want to proceed forward from here." Stratton also gave Butler a brief overview/history of an "A-Code" within Stratton's response. Refer to Stratton's response (8/7/2017) as Exhibit C.

38.    Butler counter-responded with a Request Slip on August 10, 2017 asserting contradictions within Stratton's August 7, 2017 response in comparison to the affective date of DC-ADM 11.2.1 (effective 11/24/2014) at that time and Butler gave Stratton consent to process a vote sheet for the A-Code housing classification. Refer to 8/10/17 Request slip as Exhibit-D.

7.

39.    Stratton responded on August 14, 2017 (Exhibit-D) stating in part; "I'll run a Vote Sheet."

40.    On August 28, 2017 Butler was called to Stratton's Office (Butler's counselor) in which Stratton told Butler that he was denied the A-Code housing classification.

41.    Butler wrote a request slip to Stratton on August 30, 2017 in order to get the A-Code denial in writing and for Butler to follow-up on inquiry of what DOC staff members were assigned to vote on the A-Code classification. Refer to 8/30/2017 Request Slip as Exhibit -E.

42.    Defendant Stratton responded on August 30, 2017 by informing Butler that "the facility did not support the A-Code and the Superintendent does make the final decision ." Stratton also provided the titles of all DOC staff members who were allowed to vote on an A-Code classification (see Exhibit-E).

43.    Butler wrote to the identified administrative staff members responsible for voting on a Program A-Code classification starting with Defendant Ralston.

44.    Butler wrote to defendant George Ralston on September 1, 2017 for the purpose of asking "why" was Butler being denied a Program A-Code housing classification due to the fact that Butler met the criteria of DC-ADM 11.2.1, sec. 5 (C)(1)(f) and Butler was required to receive a response in accordance with DC-ADM 11.2.1, sec. 5 (C)(1)(f) explaining the "specific reason" for Butler being ineligible for a Program A-Code. See 9/1/2017 request slip attached as Exhibit-F and 11.2.1, section (C)(5)(b) attached as Exhibit -G.

45.    Butler was not told "why" he was denied a Program A-Code classification during the meeting with counselor Stratton on 8/28/2017.

46.    Defendant Ralston responded to Butler on September 6, 2017 stating "Per 11.2. 1 Section .C Effective Date 8/11/2017 there is no longer an "A" Code only "Z" you do not meet the criteria for "Z" Code (see Exhibit-F).

47.    On September 1, 2017, Butler also wrote to defendant Kevin Kauffman posing the same query of "why" was he (Butler) denied a Program A-Code classification. See 9/1/17 request slip to Kevin Kauffman Attached as Exhibit-H.

48.    Defendant K. Kauffman responded on September 6, 2017 stating "You can contact your UM (Unit Manager) for this information." (See Exhibit-H).

49.    Butler contacted defendant William Scott Walters on September 1, 2017 by request slip posing the query of "why" was he (Butler) denied a Program A-Code classification. See 9/1/2017 request slip to William S. Walters Attached as Exhibit-I.

50.    Defendant W.S. Walters responded on September 8, 2017 stating "Central Office no longer approves A Codes." (See Exhibit-I).

51.    On September 4, 2017 Butler wrote to defendant John C. Thomas, Jr., posing the query of why was Butler denied a Program A-Code classification. See 9/4/2017 request slip to J. Thomas attached as Exhibit-J.

52    Defendant J.C. Thomas responded (date of response was not given) stating ""A" Code is not a right but an earned subjective privilege. That being said, still need to write this request to your Unit Manager Team, then the UM (Unit Management) Major," (see Exhibit-J) though Butler did not receive this response until 9/25/2017.

53.     On September 4, 2017 wrote to defendant Lonnie Oliver posing the query of why was Butler denied a Program A-Code Classification. See 9/4/2017 request slip to L. Oliver attached as Exhibit-K

54.     The 9/4/2017 request slip to L. Oliver (Exhibit-K) was returned to Butler, by stable, to the return request slip sent to J. Thomas, with no response from L. Oliver. Upon information and belief, the attachment of L. Oliver's request slip to J. Thomas' request slip seemed to have indicated the J. Thomas' response to Butler's request slip spoke for both J. Thomas and L. Oliver.

55.     Butler, again wrote to defendant G. Ralston on September 13, 2017  in order to receive clarity on an incorrect citing of section with  DC-ADM 11.2.1 cited by Ralston. The 9/13/2017 request slip to Ralston is attached as Exhibit-L.

56.     Ralston responded to Butlers 9/13/2017 query by stating on 9/18 2017 "single celling is Section "5" the current policy is effective 8/11/17 there is no longer an "A" code only Z. Regardless you were processed and denied a single cell due to longevity." (see Exhibit-L).

57.     Butler is "still" currently forced to be double-celled against his own will/ volition thereby causing duress upon him by the unconstitutional conditions that are still in existence at SCI-Huntingdon in combination with the forceful act of double-celling Butler, thereby, showing that the wrongful actions of the defendants continue to the present day through their neglect to accommodate Butler with single cell within such deplorable conditions which has caused Butler mental and psychological degeneration over time.

**Sudden Change of Prison Single-Celling and Double Celling Housing Procedure:**

58.    On August 4, 2017, without warning, it is upon information and belief that
Defendant Wetzel ordered defendant Kauffman and, upon information and belief, all other prison
superintendents in the state to remove Program Code-A housing classifications for an inmate to
acquire a single cell serving 10 years or more from any inmate that had currently been housed
under this said classification along with the removal of Program Code-A Housing Classification
under DC-ADM 11.2.1 Section 5 altogether with an effective date of August 11, 2017. DOC Policy
DC-ADM 11.2.1, Section 5 (Issue date 8/4/2017) is attached as Exhibit -M.

59.    On August 4, 2017 without warning it is upon information and belief that Defendant
Smeal participated in the formulation of DOC policy DC-ADM 11.2.1, Section 5 (cited as
Exhibit-M) of which ordered defendant Kauffman and, upon information and belief, all other
prison superintendents to remove Program Code-A housing classifications for inmates serving 10
years or more to acquire a single cell from an inmate that had currently been housed under the
said classification along with the removal of a Program Code-A Housing Classification under
DC-ADM 11.2.1, Section 5 Altogether.

60.    On August 4, 2017, without warning, it is upon information and belief that
Defendant Roberts participated in the formulation of DOC policy DC-ADM 11.2.1, Section 5
(Cited as Exhibit-M) of which ordered defendant kauffman and, upon unformation and belief, all
other prison superintendents to remove Program Code-A housing classifications for inmates
serving 10 years or more to acquire a single cell from any inmate that had currently been
housed under this said classification along with the removal of a Program Code-A Housing
classification under DC-ADM 11.2.1, Section 5 altogether.

61.    On August 4, 2017, without warning, it is upon information and belief that
Defendant Kashmere participated in the formulation of DOC Policy DC-ADM 11.2.1, Section 5
(Cited as Exhibit-M) of which ordered defendant Kauffman and, upon information and belief all
other prison superintendents to remove Program Code-A housing classifications for inmates
serving 10 years or more to acquire a single cell from any inmate that had currently been
housed under this said classification policy along with the removal of a Program Code-A
Housing Classification under DC-ADM 11.2.1, Section 5 altogether.

62.    On August 4, 2017, without warning, it is upon information and belief that
Defendant Bickell participated in the formulation of DOC Policy DC-ADM 11.2.1, Section 5

(Cited as Exhibit-M) of which ordered defendant Kauffman and, upon information and belief, all other prison superintendents to remove Program Code-A from any inmate that had currently been housed under this said classification policy along with the remove of a Program Code-A Housing Classifications for inmates serving 10 years or more to acquire a single cell from any inmate that had currently been housed under this said classification policy along with the removal of a Program Code-A Housing Classification under DC-ADM 11.2.1., Section 5 altogether.

63.   On August 4, 2017, without warning, it is upon information and belief that Defendant Wenerowicz participated in the formulation of DOC Policy DC-ADM 11.2.1, Section 5 (Cited as Exhibit-M) of which ordered defendant Kauffman and, upon information and belief, all other prison superintendents to remove Program Code-A from any inmate that had currently been housed under this said classification policy along with the remove of a Program Code-A Housing Classifications for inmates serving 10 years or more to acquire a single cell from any inmate that had currently been housed under this said classification policy along with the removal of a Program Code-A Housing Classification under DC-ADM 11.2.1., Section 5 altogether.

64.   Plaintiff Jeramey Melvin Wrote to Defendant Stratton on January 26, 2018 requesting a Program Code-A housing classification under DOC policy DC-ADM 11.2.1., section 5- Single Calling (C)(1)(f) as Melvin met the criteria for said code/ DOC Policy for a single cell due to Melving being sentenced to a 30 to Life term imprisonment. 1/26/2018 request slip to Stratton is attached as Exhibit-N.

65.   Defendant Ralston unwarrantably responded to the request slip initially sent to defendant Stratton on Januyary 28, 2018 (see Exhibit-N) stating "This is not current policy, you will not be processed for an "A" Code."

66.   Melvin subsequently wrote to Ralston directly on February 1, 2018 requesting Program Code-A housing classification or proof of its discontinuance. See 2/1/2018 Request Slip attached as Exhiubit-O.

67.   Ralston responded on February 6, 2018 (See Exhibit-O) by stating "in accordance with 11.2.1 there is no more A code. This policy is dated 8/4/2017."

68.    Melvin wrote to defendant Kauffman on Febuary 8,2018 to get confirmation of the prevalence of Program Code-A housing classifications' existence  and also to express his curiosity as to why was Ralston responding to request slips sent to other DOC staff member. 2/8/2018 Request Slip is attached as Exhibit-P.

69.    Defendant Ralston again responded unwarrantably to the request slip sent to Kauffman. The response date was on February 12, 2018 stating "You will not be processed for an "A" Code. It is not current policy. You may access the Policy in the library or on DOC Public site." (See Exhibit-Q).

70.    Melvin filed his initial greivance on February 16, 2018 under the given grievance No. 721950 asserting that the request slip responses all given by Defendant Ralston were contrary to both DC-ADM 11.2.1, Section 5 (Already cited as Exhibit-B) and Eighth Amendment Rights to cruel and unusual punishment for forcing Melvin to be double-called in an overcrowded,dilapidated,and unsanitary state prison environment at SCI-Huntingdon. Refer to Exhaustion of Legal Remedies herinafter.

71.    The wrongful actions of the defendants continue to the present day through their neglect to provide Melvin with a single cell in such deplorable, overcrowded, an unsanitary conditions within SCI-Huntingdon and paragraphs 57-62 are incorporated to apply to Melvin's facts here by reference.

**Fire Safety Hazard:**

### 11/18/2017 Event

72.    On November 18, 2017 Plaintiff Butler was housed inside his cell (cell 4040) on the 4th tier when awaiting the announcement of afternoon "half-time" break for yard recreation in which inmates are allowed to attend the yard, upon when the said announcement was given, no correctional officer opened the main security bar (bar must be unlocked and pulled manualy, there is no electronic system), of which secures and locks the entire tier that Butler was housed on.

73.    Butler called out onto the tier to alert any officer working the unit that the tier was not open.

74.    No officer responded nor opened the tier resulting in an announcement that "the yard gate was now closing."

13.

75.     After this announcement was given, the security bar was released thereby opening Butler's cell gate.

76.     Butler left out of his cell in order to try to attend the half-time yard but was told by officers at the front desk that he had missed it.

77.     Butler upon returning to his cell, noticed that only two correctional officers were working on only 2 of the four tiers on Butler's unit (CA-Unit).

78.     Butler sent a request slip DC-135A, to Defendant Walters and the Security Office on November 22, 2017 presenting his grievances with the antiquated designs of the his cell on the assigned unit and said cell design being considered a fire safety hazard. 11/22/2017 request slip to both parties are attached as Exhibit-R and Exhibit-S.

79.     Butler only received a response to said request slips from Walters stating "I'll send this to UM Ralston to address with CA Unit Steff." There was no response given by the Security office (see Exhibit-S).

80.     Butler sent a request slip to defendant Ewell on November 26, 2017 addressing the fire safety haazerd 11/26/2017 request slip is attached as Exhibit-T.

81.     Ewell never responded to the 11/26/2017 request slip (see Exhibit-T).

82.     Butler filed inadequate ventilation, a timely grievance ;under Grievance No. 710611 on December 7, 2017 raising fire safety hazards, among other things, while conclusively requesting that the necessary renovations be made to provide a fire safe and secure condition at SCI-Huntingdon. Refer to the Exhaustion of Legal remedies section herinafter.

## 2/28/2019 Event

83.     On February 28, 2019 Butler was at attendance at his 9:40 AM International Computer Driving License (ICDL) class located on BA-Unit when, suddenly Butler, along with all other prisoners, was told to immediately return to his assigned housing unit cell then subsequently double locked in his cell, meaning individually locking his cell with a key and then placing a security bar to lock "all" the cells on his tier, several minutes later as the jail was in a facility wide lock-down within SCI-Huntingdon.

14.

84. While still double locked in the cell, Butler discovered upon information and belief, that the entire jail was locked down due to there being a fire in the dinning hall kitchen.

85.     SCI-Huntingdon resume to its regular operations hours later that same day.

86.     Upon personal knowledge, Butler stands by there never being a sounding of any alarm within SCI-Huntingdon during the time of this fire on this day (2/28/19) nor was there ever a fire-drill called for or an evacuation protocol followed at the time of this fire on 2/28/19.

87.     Butler filed a timely grievance (No. 790024) on March 3, 2019 raising, again, fire safety hazards as to include failure to follow fire-drill/evacuation protocol, no sounding of a fire alarm, there being no master locking system for the individual cells, no operational ventilation system, no smoke exhaust fans, no proper fire equipment, and an understaffing claim while calling for necessary renovations at SCI-Huntingdon. Refer to exhaustion of Legal Remedies hereinafter.

88.     The wrongful actions of the defendants on 11/18/2017 and 2/28/19 continue to the present day through the failure to correct all fire safety hazards presented by Butler which thereby places Butler in immediate and imminent danger of his life.

### 3/5/2018 Event

89.     On March 5, 2018, Melvin had returned to his unit after attending chow when he looked to signal a tier officer to inform them that he had to use the bathroom and therefore needed to get into his cell immediately.

90.     Melvin saw absolutely no tier officers on any of the 4 tiers that make up the unit (CA-Unit) that Melvin is housed on and was forced to wait in front of his cell on the tier for, upon information and belief, every bit of "12 minutes" as Melvin checked the watch that he was wearing at the time of his return from chow to the time that the tier was actually opened for him by an officer who was not posted as tier officer. As this officer was a search team officer who had happened to be conducting a cell search of another prisoner on Melvin's tier.

91.     Melvins excessive wait on the tier caused him to defecate on himself assuming that what he felt or was feeling in that moment was the nature of his body wanting to relieve it's bowels and the pressure of attempting to restain them became so immense he was forced to self defecate without the ability to reach the tiolet located in his cell just feet behind his locked door.

15.

92.    Melvin wrote a request slip (form DC-135A) to the facility manager, Defendant Kauffman on March 5, 2018 addressing his self defecating incident, understaffing issues, and the presence of multiple fire hazards. It was responded to by Defendant Brumbaugh on March 9, 2018 stating "staff levels are appropriate." And that he ( Brumbaugh ) would address Melvin's concerns regarding timeliness with the Unit Management Staff. Request Slip (Form DC-135A) is attached as Exhibit-U.

93.    Melvin proceeded to file a grievance assigned No. 728527on March 22, 2018 raising claims of fire hazards, understaffing issues, self defecation among other things. Refer to exhaustion of Legal remedies hereinafter.

### 2/28/2019 Event

94.    On February 28, 2019 Melvin was preparing ot go to lunch when an announcement was made instructing all inmates to go back to their cells.

95.    Melvin, along with all other inmates, was then double-locked in his cell as there were no-evacuation protocols followed nor was there a sounding of "any" alarm and all prisoners cells were "unlocked" several hours later as SCI-Huntingdon had resumed to it's regular functions.

96.    Melvin filed a grievance on March 3, 2019 (Grievance No. 789935) raising the claims of failure to follow the evacuation procedures, fire safety hazards, fire exit doors not functioning properly, no master system for unlocking cells, all of which places Melvin in immediate and imminent danger and possibly death, among other issues, while referencing fire hazards raised in Melvin's previous grievance filed under No. 728527. Refer to Exhaustion of legal remedies hereinafer.

**No Sufficient Ventilation System:**

97. Paragraphs 82-87, 90-91 are all incorporated here by reference in order to provide the material facts describing the incident of said claim here.

98.    Butler asserts that there are no systems to control temperature or humidity, causing excessive odors, head and humidity. During summers air flow is provided only by opening windows many of which broken by prison personnel attempting to open them.

99.    Butler filed a timely grievance under No. 710611 on December 7, 2017 raising

inadequate ventilation, among other things. While conclusively requesting that the necessary renovations, repairs, and corrections be made to provide a sufficient ventilation system at SCI-Huntingdon (See Exhaustion of Legal Remedies hereinafter).

100.   On February 18, 2018 Melvin was forced to move from the current cell that he occupied to another cell due to him having an "H-Code" Classification Status (This requires Melvin to move to a different cell 90 days as it pertains to being deemed as an escape risk). Hereby moving him from cell #2020 on the 2nd tier to cell #3013 on the 3rd tier. He experienced a barrage of cigarette smoke, head and general polution in air quality as all of these things rose into his cell due to there being no adequate ventilation which, upon information and belief, significantly increases the risk of transmission of airborne disease.

101.   Melvin wrote a request slip to both Defendants Paula Price (Health Care Administrator) and Kevin Kauffman (Facility Manager) on February 28, 2018 presenting the claims of inadequate ventilation causing there to be an enormous amount of cigarette smoke and heat. The small of poor hygiene, human waste and sickness (of both staff and prisoners) as well as a vermin issue.

102.   Melvin received no response from any of the request slips sent to the aforementioned parties (Price and Kauffman).

103.   Melvin filed an initial grievance enter as No. 72587 on March 11, 2018 raising claims of inadequate ventilation of which presents various other deplorable conditions to heat, oders, humidty, cigarette smoke, transmission of airborne disease, as well as raising vermin issues and other conditions. Refer to exhaustion of legal remedies hereinafter.

104.   After filing of Melvin's of grievance #72587, Melvin finally received a response to his request slip to Defendant P. Price though the response came from Defendant Michelle Harker stating "these housing issues need to be addressed with your Unit Manager." Also telling Melvin to sign up for sick call for any issues from the conditions affecting his health. Request slip dated 2/28/18 is attached as Exhibit-W.

105.   On March 15, 2018 Unit manager, Defendant Ralston, responded to the request slip sent to Defendant K. Kauffman stating "I will speak to 2pm to 10pm shift and have you placed on a lower tier and placed with a non-smoking cellmate." 2/28/2018 request slip is attached as Exhibit-X.

106.  After the above response though still without receiving a response to Melvin's grievance, defendant Robert Bilger (Safety Manager) and Defendant Mandy Sipple (Major of Unit Management Team) came directly to speak with Melvin at his cell door on April 9, 2018 concerning all the issues raised in his grievance. Upon which their verbal responses only confirmed the existence of the deplorable conditions mentioned.

**Overcrowding and Understaffing Issues:**

107.  On September 20, 2017, Butler filed his initial grievance under tracking #698749 asserting claims of the violation of DC-ADM 11.2.1., Section 5 (see Exhibit-8) and Eighth Amendment Rights to not be subject to cruel and unusual punishment as 8th Amend. Rights are violated by "forcing" Butler to be double-celled in an "overcrowded," dilapidated and unsanitary state prison environment at SCI-Huntingdon as his December 7, 2017 grievance filing under tracking # 700611 raising the understaffing of the guards among other things. Refer to Exhaustion of Legal remedies hereinafter.

108.  Butler asserts that general population in the facility of SCI-Huntingdon is overcrowded and the result of such overcrowding is substantiated by the known fact of there being a t-shirts, boxers, socks, washcloths, towels and bedding shortage (as prisoners are receiving "used towels and bedding). Also, upon information and belief, inmates are on edge because they are elbow to elbow with no proper individual space per prisoner. Thereby creating a very dangerous situation as Butler is very irate by the unreasonable closeness of individuals paired in cells. The general space in SCI-Huntingdon not made for the capacity of its current population, Upon information and belief SCI-Huntingdon was constructed in the late 1800's meant only to house a few hundred inmates (at most). Currently there are approximately 2,000 (inmates). This (the facility construct) leads to meals being served and finishing late constantly causing all yard movements and recreational line movements to be announced extremely late. Reducing recreation significantly below the promulgated 2 hours. Refer to SCI-Huntingdon's Recreational Schedule as Exhibit-V.

109.  Butler's sole purpose for requesting a Code-A housing classification on August 6, 2017 was due to the overcrowding of prisoner directly affecting him. Being housed in cells of limited space, below 50 sq. feet, this has caused a degeneration of Butler's emotional psychological mind-state, causing conflict amongst him and his cell-mate.

110.  Butler's claim in Paragraphs 72-88 are incorporated here by reference concerning an understaffing issue at SCI-Huntingdon.

111.    Butler asserts that he is housed on CA-Unit within SCI-Hubntingdon. This particular unit has four tiers that house prisoner on each.

112. During the incident on November 18, 2017, Butler asserts that there were only two Unit Officers posted on 2 of the tiers though they where responsible for manning all four.

113.    Butler also asserts that this highly questionable and/or impermissible practice has happened on a consistent basis prior to 11/18/2017 and is still practiced to this very date.

114.    Upon information and belief this very practice is causing the staff on CA-Unit to be tremendously overtaxed with short fuses and/or intolerance as there are times through the course of a day where there is only "one" officer tending tiers 2-4.

115.    Paragraphs 70-81 are incorporated here by reference concerning claim of an overcrowding issue at SCI-Huntingdon. Melvin asserts he had a bad experience with a cell mate openly masturbating which lead to a physical altercation. Melvin asserts he became mentally unstable being housed with another prisoner in such close quarters.

116.    Melvin asserts that his reasoning for requesting a Code-A housing classification on January 26, 2018 was due to the fact that SCI-Huntingdon is overcrowded. He had had to occupy living space with another prisoner with inadequate space. The fact that SCI-Huntingdon is double-celling two prisoners in cells that were only built to house one substantiates said claim of overcrowding.

117. Melvin asserts that he had attemped to acquire his annual  issue of undergarments and could not due to there being none in stock. This is a frequent occurrence in SCI-Huntingdon.

118.    Upon information and belief, Melvin also asserts that SCI-Huntingdon was not made to house the capacity that it currently has in it's general population. SCI-Huntingdon was built in the year of "1898" at which time the housing capacity was significantly lower.

119.    Melvin asserts that all yard recreational movements are delayed on a daily basis due to, upon information and belief, the time that it takes to run the three meal lines through the course of a day. This causes a drastic shortage of yard time that Melvin and all other prisoners receive on account of there being to many prisoners to feed (this also results in shortages of food). This in turn exacerbates any attempt at incorporating any attempt at

19,

120.     Paragraphs 89-96 are incorporated here for reference concerning Melvin's claim of an understaffing issue at SCI-Huntingdon.

121.     Melvin asserts that on March 5, 2018 there were absolutely no officers tending to any of the four tiers that make up CA-Unit which is the unit that Melvin was, and currently still is housed on during the time of the incident in which he had been forced to defecate on himself after standing on an unmanned tier for "12 minutes." This speaks to the understaffing issue at SCI-Huntingdon

122.     Melvin asserts that on a daily basis on CA-Unit at SCI-Huntingdon there are no more than "two" officers tending to all four tiers for the purpose of locking and unlocking prisoners cell doors by pulling the security bar for said tiers.

123.     Upon information and belief, Melvin asserts that he has been told that the practice of officers tending to multiple tiers is causing those officers on CA-Unit in SCI-Huntingdon to be tremendously overtaxed with an unreasonable amount of stress. There are times when one officer, in a period of a day, must tend to three different tiers all at once.

**Shortage of Appropriate Yard Recreation and Line Movement Time Allotments:**

124.     On April 7, 2019 Butler was waiting to attend AM Yard recreation when the announcement was given for this movement at 8:50 AM upon which Butler placed his sneakers on and proceeded to walk down the tier.

125.     Butler was about 15 feet from the front steps of the tier and where the front gate to CA-Unit is located when the "last call" announcement for attending yard was called. In less than 5 seconds as Butler was descending the steps defendant Barr screams, "gates closed." This caused the entire announcement of AM yard and it's last call announcement to toll a total of "less than5 minutes." Upon information and belief.

126.     It is a fact that as Butler was just several steps from the bottom landing and the Unit's from gate there was another prisoner walking out of the same front gate on his way to attend yard.

127.     Butler wrote a "Request Slip" to Defendant Brumbaugh on April 7, 2019, presenting the unreasonably limited amount of time to exit the unit for yard as well as the delay in the announcement of yard. Along with the time yard was called in. Refer to request Slip address to Brumbaugh (See Exhibit (Z)

128.   Defendant Brumbaugh never gave a response to Butler's request slip. (See Exhibit-Z).

129.   Butlers Grievance (No. 796674) was to follow.

130.   Butler also asserts the fact that the time of which the yard recreation was called at 8:50 AM was after the scheduled time allotment in the recreations schedule posted in SCI-Huntingdon 2017 Handbook which discloses the morning hours for recreation being from 8:15-10:15 AM. Refer to SCI-Huntingdon 2017 Inmate Handbook Supplement as Exhibit-BB.

131.   Butler asserts the fact that the delay of yard recreation displayed on 4/7/2019 is also a frequent occurrence in SCI-Huntingdon during all three yard recreational times. At all times mentioned the yard is under the control and/or is run by Shift Commander, Defendant Brian Harris. Thereby forcing Butler to spend more time in a double-cell that is below the required living space for a single cell.

132.   Upon information and belief, Butler asserts that CA-Unit is a few feet short of being the length of a city block. With four tiers worth of cells on both sides of the unit.

133.   The wrongful actions of the defendants continue to the present day through their neglect to provide the general population with the specified 2 hours of yard recreation disclosed in SCI-Huntingdon's Handbook.

**Vermin Endemic Claims:**

134.   Paragraphs 100-106 are incorporated here by reference concerning Melvin's claim of the pressence of various types of vermin being an issue within SCI-Huntingdon.

135.   Melvin aserts the fact that there are a plethora of vermin living within the individual cells and within the facility itself.

136.   Melvin asserts that spiders were and still are currently living within the vents (non-functioning vents in back of each cell) on CA-Unit. Spiders inhabit the prison bars at the front of cells leading to a cluster of spider-webs. They also inhabit CA-Unit windows and light fixtures. Upon information and belief, this results in numerous severe spider-bites of prisoners throughout the unit and the facility in general.

137.   Melvin asserts that other vermin living within the non-functioning vents in each

21.

cell are ants, water bugs and other strange insects which exposes the inadequacy of the ventilation system that is supposed to be operable in the cells on CA-Unit at SCI-Huntingdon.

138.     Melvin asserts by observing first hand an upon information and belief that a sizable bird population had entered the blocks through open doors and birds that already live in the facility now nesting in pipes and other crevices near the ceiling, leading to a continuous habituation as well as infections diseases.

139.     The facts asserted by Melvin is supported by the initial review response to grievance No. 725870 given by Defendant Sipple  as well as there being a memo posted on the prison channel which addresses a bed bug issue that apparently has spread throughout A-Unit within SCI-Huntingdon along with remedies in medical treatment administered without any medical co-payment fees for any prisoners who report a bed bug matter.

140.     Upon information and belief, DA-Unit in SCI-Huntingdon has had a significant amount of bed bug occurrences in the past recent months which further solidifies the "fact" that there's a recognizable vermin issue within SCI-Huntingdon.

141.     The wrongful actions of the defendants continue to the present day through their neglect to provide a sufficient resolution to prevent continued habitation of birds as well as not providing a method to alleviate the infestation of spiders, ants, and other insects living in the vents within the cells on CA-Unit at SCI-Huntingdon.

**Retaliatory Treatment Claims:**

**4/3/2019 Incident**

142.     On April 3, 2019 Butler received a commissary purchase in which he noticed that there were additional commissary item numbers added to his receipt which was registered as a "rejected item" by way of it being deemed an "Invalid Line Item Quantity." refer to April 3, 2019 Commissary receipt attached as Exhibit-CC.

143.     Butler asserts that he did not fill these rejected item numbers in on the commissary bubble sheet (a form that prisoners use to purchase items from commissary  in SCI-Huntingdon (and upon information and belief, all PA Department of Correction Facilities) that he submitted on March 27, 2019 and, in fact, had the same type of issue with his commissary purchase puck up just a week prior. Refer to March 28, 2019 Commissary Receipt attached as Exhibit-DD.

144.     Butler filed a grievance on April 3, 2019. It was given the grievance No. 795556, raising the claim of correctional staff member (or members) deliberately placing extra numbers on Butler's commissary bubble sheet constituting impermissible tampering as well as Butler requesting that Camera footage on his Unit (CA) from the time that Butler's bubble sheet was collected by the guard (on March 27, 2019 at 8:30 PM) to the date and time that the bubble sheet was officially scanned (on March 28, 2019 at 12:39 PM) in order to find a possible suspect. Also requesting a copy of his bubble sheet of the date in question. Refer to "Exhaustion of Legal remedies" included hereinafter.

145.     After filing grievance No. 795556 and receiving an initial review response denying said grievance, Butler appealed the matter to the Facility Manager on May 5, 2019.

146.     While awaiting a response to Butler's appeal to the facility manager, Butler was unimpededly called to the front of his unit on May 23, 2019 where Defendant Wakefield came to see Butler in order to show him a copy of his alleged Commissary bubble sheet for the date in question and to coerce Butler into completing a Grievance Withdrawal Form (which Wakefield bought with her) in order to have Butler withdraw said grievance exhaustions due to Wakefield showing Butler this copy of what was to be his bubble sheet.

147.     Butler stated that he would "consider" submitted a grievance withdrawal if he were to receive the actual commissary bubble sheet itself or a copy thereof. Defendant Wakefield stated that it should be no problem once it was cleared by the appropriate authority and that it would be sent to Butler by the end of the day.

148.     Butler did not receive the commissary bubble sheet on 5/23/2019 or the entire next day on 5/24/2019 so Butler waited until the end of the day on 5/24/12019 then wrote to Defendant Wakefield to demand that his appeal be reinstated for a response from the Facility Manager if any process to the grievance withdrawal had been undergone. refer to Request Slip as exhibit-EE.

149.     Defendant Wakefield responded to said request slip (exhibit-EE) by stating in part, "I called your counselor and he informed me that he gave it to you today (indicating the date of 5/28/19). I agreed to give you a copy for your records and now you have it there fore there is no reasons to reinstate the appeal and nullify the withdraw."

150. Butler had not, however, received any documents from his counselor, Defendant Stratton, on 5/28/19 and therefore Butler wrote a request slip to Defendant Stratton on 5/29/19 informing Stratton that his (Butler's) appeal could not be considered resolved due to Butler not being met by Stratton (his

counselor) to verify that resolve and to determine a withdrawal was appropriate in accordance with DOC Policy DC-ADM 804, Section 1 (A)(25)(c). refer to DC-ADM 804 attached as Exhibit-FF.

151. Butler then received an alleged copy of the commissary bubble sheet that same day, 5/29/19.

152. Butler was called to his counselor's (Stratton) office on May 30, 2019 concerning the 5/29/19 request slip to Stratton and was shown a Grievance withdrawal that had been filled out solely by Wakefield including a forgery of Butler's signature in the section designated for the prisoners signature as he (Stratton) wanted to assure Butler that he had not signed off in the section of the grievance withdrawal that is reserved for the counselor's signature or the "Withdrawal Verified" Sections which Butler asserts was still not signed by Stratton on 5/30/2019.

153. However, on May 31, 2019 Butler suddenly receives a copy of Grievance withdrawal Form of which now on said date (5/31/2019) has Defendant Stratton's "signature" affixed to the document along with Stratton "back-dating" the document with a "5/23/19" date next his signature.

154. The Grievance Withdrawal Form was delivered to Butler's C/O (Corrections Officer) Merritts II on 5/31/119 as soon as Butler saw what the Document actually was he immediately stepped out of his cell, at first chance, and held the document up to the cameras on his unit while reporting to the officer who delivered the document and then getting confirmation from the unit officer who sorted the "jail mail" (these are in-house documents in SCI-Huntingdon such as request Slips,, etc.) which Butler discovered was C/O 1 Armstrong that grievance withdrawal was sent that day 5/31/19. Also, discussing the matter with the Unit Sergeant C/O 2 Jenkins who confirmed that it was sent to the unit on that day as well.

155. Due to the forgery of Butler's signature the violation of DOC policy DC-ADM 804, Section 1(A)(25)(a) and (c) and the impermissible processing of the grievance withdrawal all of which was revealed grievance to Butler upon him receiving the grievance withdrawal on My 31, 2019 Butler filed an emergency grievance on May 30, 2019 )No. 803973) presenting the injury and hindrance of Butler's right to the grievance processing system and obstruction and evil intent. Also presenting (in said Grievance) deliberate indifference by Defendants Wakefield and Stratton. Grievance No. 803973 is included in the "Exhaustion of Legal Remedies" hereinafter.

156. Butler also asserts the fact that the deceptive behavior and/or arbitrary actions were carried out in part by a staff member who was not the Grievance Coordinator as "Required" by DC-ADM 804, Section 1(A)(25)(a) through (d) of which said job title belongs to Defendant Constance Green and

not Defendant Andrea Wakefield who is currently reported, upon information and belief, as being the records Supervisor. refer to SCI-Huntingdon 2017 Inmate Handbook Supplement as Exhibit-GG.

157.    Upon information and belief, Butler was told that Defendant Green was present as SCI-Huntingdon on 5/23/2019 in order to hand her responsibility of making an attempt at trying to get Butler to give his consent to filling grievance withdrawal form to grievance No. 795556, herself, instend of the same attempt that was made by Defendant Wakefield.

158.    Due only to the filing of the emergency grievance on 5/31/19 was the grievance appeal No. 795556 then reinstated on June 5, 2019 By a letter correspondent from Defendant Green which stated in Part," As a result, you will be receiving an appeal response form the Superintendent for No. 795556 and an initial response for grievance No. 803973." Refer to Letter Correspondent attached as Exhibit-HH.

159.    The outcome of both grievance No. 795556 and No. 803973 are explained in the "Exhaustion of Legal Remedies" section hereinafter.

### 5/16/2019 Incident

160.    On May 16, 2019 Butler was washing out his clothes at the sing when two officers, Defendants J. Reed and T. Emigh, stopped at Butler's cell, which is a double-cell though only Butler was present as his cell mate was at work during the time of this incident

161.    Both officer stood at Butler's cell door clearly observing Butler being the only prisoner in the cell at the time and after a few seconds both officers walked away from Butler's cell.

162.    Moments later, both officers (J.  Reed and T. Emigh) reappeared at Butler's cell and told Butler that "this is a cell search, please step out of the cell" of which Butler put on his shirt and complied with the officer's orders

163. Upon Butler exiting the cell, neither Defendant J. reed nor Defendant T. Emigh asked Butler to sign a record to show that Butler was present during the search of his cell prior to these officers entry of Butler's cell in  accordance with DOC-Policy DC-ADM 203, Section 1(B)(2) and (C)(4)(a).

164.   One in Butler's cell, Defendant Reed began going through Butler's property, tossing all of Butler's legal papers around with total disregard of the specific and discerned order that Butler had placed his legal material. Butler assists other prisoners with their legal material as a "jail-house" lawyer by description and had drafted material fort a few other prisoners that was now mixed completely up with Butler's own legal papers. Certain pages that Butler composed went missing of which, upon information and belief, was more then likely placed in the garbage bag that the said offers had in their possession for whatever they deemed to dispose of. Upon exiting Butler's cell there were several miscellaneous items in this bag as to including papers said officers must have mixed with Butler's legal papers. Butler no longer has those legal documents (upon careful inspection of his own personal property) after that siad cell search.

165.   Defendant Reed began to question Butler about medication belonging to his cell-mate that Reed determined was expired and began to tell Butler that he is required to report contraband, which is what he had then deemed his cell mates medication, though Butler had no way of knowing that his cell-mates "prescribed medication " was, in fact, expired nor was it Butler's responsibility to know about medication personally prescribed to his cell-mate. This particular item is "confidential" in nature and Butler was not in the privity of this said item.

166.   Defendant Reed then rummaged through Butler's cellmate, Russell Weathers GA-1562, property in the absence of Butler's cellmate as said call-mate was at his designated job assignment (kitchen) at the time.

167.   Upon cell-mate Russell Weathers' return to the cell he and Butler occupied, Weathers began to question the condition of which he found his property. This resulted in him questioning Butler about property that Weathers could not locate, forcing Butler to be subjected to various unwarranted scrutiny as Butler's cell-mate was, in fact, required to be present during this alleged "Random Search."

168.   It is a fact that this said search by Reed and Emigh  was not the conduct of a random search and was obviously geared towards retaliation for Butler's proper use of the grievance system by which he raised the prior claims, supra.  This said search on 5/16/2019 resulted in these two officers (Reed and Emigh) initially stopped at Butler's cell, examined the occupant within the cell (without either officer speaking to the occupant, Butler) then walked away, up to the front of the tier only to return to Butler's cell just shy of a minute later and asking him to step out of the cell to conduct a search in violation of policy (only one occupant).

26.

169.    Butler filed a grievance on 6/6/19 on order to request and preserve camera footage of the intentional search" on this day of 5/16/2019 as said footage substantiated the facts that revealed the search not being random or neither Defendant having any documentation for Butler to sign (for verification that he was present). Refer to Exhaustion of Legal remedies hereinafter.

170.    Upon information and belief, the wrongful actions/ practices of the Defendants continue to the present day through the failure of any Search Team Officers to conduct random cell searches in accordance and adherence with DC-ADM 203 Section 1(B)(2) and (C)(4)(a). Also, the fact of an actual injury sustained by Butler for the loss of his legal documents which basically consisted legal cases cited that have since then been removed from the institutional law library's Lexis Nexis computer database program.

## EXHAUSTION OF LEGAL REMEDIES

**Double Cell/ OverCrowding Grievance:**

171. Plaintiff Butler used the prisoner grievance procedure available at SCI-Huntingdon to try and solve the problem. On September 26, 2017. Plaintiff Butler, presented the facts of a violation of DC-ADM 11.2.1 Section 5 (C)(2)(f) and (C)(5)(b) as well as him being forced to double-cell in an overcrowded dilapidated and unsanitary prison environment relating to this compliant. It was given the tracking #698749.

172.    On September 28, 2017 Plaintiff Butler was sent a response stating that the grievance was rejected and that he could re-submit it providing specific dates showing timeliness.

173.    On Spetember 28, 2017 Plaintiff Butler resubmitted his grievance asserting the same claims and providing specified dates of his complaint for a "second" time.

174.    On October 3, 2017 Plaintiff Butler was again sent a response in the form of a denial by rejection due to timeliness.

175.    On October 18, 2017 Butler appealed the denial of the grievance to the Facility Manager.

176.   On November 17, 2017 Plaintiff Butler was sent an "Upheld Response" to the grievance rejection resulting in a denial by facility manager.

177.   On December 6, 2017 Butler appealed the denial to the Final Level of the SOIGA.

178.   On December 19, 2017 Butler was sent a dismissal upholding the grievance rejection due to timeliness. All grievances and appeals to No. 698749 are placed in chronological order. All as Exhibit-II.

———————

179.   Plaintiff Melvin uses the prisoner grievance procedure available at SCI-Huntingdon to try and solve the problem. On February 16, 2018 Plaintiff Melvin presented the facts of violation of DC-ADM 11.2.1., Section 5 (C)(1)(f) as well as him being forced to ;double-cell in an overcrowded dilapidated and unsanitery  prison environment relating to this complaint. It was given the tracking # 72195.

180. On February 22, 2018 Plaintiff Melvin was sent a response stating that the grievance had been denied.

181.   On March 6, 2018 Melvin Appealed the denial of the grievance resulting in a denial by  the Facility Manager.

182.   On April 3, 2018 Melvin was sent an "Upheld Response" to the grievance resulting in a denial by the Facility Manger.

183.   On April 3, 2018 Melvin appealed the denial to the Final Level at the SIOGA.

184.   On May 1, Melvin was sent an Upheld Response from SOIGA by which Melvin's appeal was denied.  Said grievance and all appeals to no 721950 are placed in chronological order as Exhibit-JJ.

———————

Fire Safety Hazard/ Ventilation/ Understaffing Grievance:

185.   Plaintiff Butler used the prisoner grievance procedure available at SCI-

28,

Huntingdon to try and solve the problem. On December 7, 2017 Plaintiff Butler presented the facts of numerous fire safety hazards, no operational ventilation and understaffing of guards relating to this complaint. Said Grievance was given tracking # 710611.

186.    On December 11, 2017 Plaintiff Butler was sent a response stating that the grievance was rejected as not being personally affected.

187. On December 31, 2017 Plaintiff Butler appealed the denial of the grievance to the Facility Manager.

188.    On January 26, 2018 Plaintiff Butler was sent an Upheld response to the grievance rejection resulting in a denial by the Facility Manager.

189.    On February 13, 2018 Butler appealed the denial to the Final Level at the SOIGA.

190.    On March 14, 2018 Butler was sent a dismissal of which upheld the grievance rejection. Said grievance and all appeals to No. 710611 are placed in chronological order as Exhibit-KK.

_____

**Fire Safety Hazards, Understaffing Grievance:**

191.    Plaintiff Melvin used the prisoner grievance procedure available at SCI-Huntingdon to try and solve the problem. On March 22, 2018 Plaintiff Melvin presented the facts of numerous fire safety hazards and understaffing of guards relating to his compliant. Said grievance was given tracking # 728527.

192.    On March 29, 2018 Plaintiff Melvin was sent a response stating that the grievance was rejected.

193.    On April 15, 2018 Melvin appealed the denial of the grievance  to the Facility Manager.

194.    On May 21, 2018 Melvin was sent an Upheld response to the grievance rejection resulting in a denial by Facility Manager.

195.    On May 25, 2018 Melvin appealed the denial to the Final Level at the SOIGA.

196.    On June 11, 2018 Melvin was sent a dismissal upholding the grievance rejection. Said grievance and all appeals to No. 728527  are placed in chronological order as Exhibit-LL.

_____

## 2/28/;2019 Kitchen Fire Grievance:

197.    Plaintiff Butler used the prisoner grievance procedure available at SCI-Huntingdon to try and solve the problem. On March 3, 2019 Plaintiff Butler presented the facts of there being no fire evacuation protocol followed, no sounding of a fire alarm, and numerous pre-existing fire safety hazards relating to his complaint. Said grievance was given tracking # 790024.

198.    On March 17, 2019 Plaintiff Butler was sent a response stating that the grievance had been denied.

199.    On March 24, 2019 Plaintiff Butler appealed the denial of the grievance to the Facility Manager.

200.    On April 15, 2019 Butler was sent an uphold response to his grievance and denied by Facility Manger.

201.    On April 18, 2019 Butler appealed the denial to the Final Level at the SOIGA.

202.    ON May 20, 2019 June  5, 2019 and July 7, 2019 Plaintiff Butler wrote to SOIGA inquiring on the status of his final appeal decision for Butler had not received a decision response. Plaintiff Butler's mother contacted SOIGA by was of phone on 7/10/2019 and 7/22/2019 inquiring about an appeal response on behalf of Butler. Butler's mother was told to have Butler write to them concerning the matter hence the 7/24/2019 letter.

203.    On August 8, 2019 Defendant Keri Moore responded commenting on Plaintiff Butler's previous letters and Moore sent Butler a Final Appeal Decision Dismissal dated "May 23, 2019." Said grievance and all appeals to No. 790024 are placed in chronological order as Exhibit-MM.

_____

204.   Plaintiff Melvin used the prisoner grievance procedure available at SCI-Huntingdon to try and solve the problem. On March 3, 2019 Plaintiff Melvin presented the facts of no emergency evacuation procedure followed, numerous pre-existing fire safety hazards, his life being threatened by the conditions and no sounding of an alarm or adherence to various instructive fire exit maps not being followed relating to this complaint. Said grievance was given tracking # 789935.

205.   On March 14, 2019 Plaintiff Melvin was sent a response stating that the grievance has been denied.

206.   On March 27, 2019 Plaintiff Melvin appealed the denial of the grievance to the Facility Manager.

207.   On April 9, 2019 Melvin was sent an Upheld Response to his grievance denial by Facility Manager.

208.   On April 15, 2019 Melvin appealed the denial to the Final Level at SOIGA.

209.   On May 13, 2019 Melvin was sent a response unpholding the denial of Melvin's grievance. Said grievance and all appeals to No. 789935 are placed in chronological order as Exhibit-NN.

_____

**Ventilation/ Vermin/ Second-Hand Cigarette Smoke Grievance:**

210.   Plaintiff Melvin used the prisoner grievance procedure available at SCI-Huntingdon to try and solve the problem. On March 11, 2018 Plaintiff Melvin presented the facts of no adequate  ventilation causing him to encounter second-hand smoke causing cancer and the increase of transmitting airborne diseases as well as excessive odors, heat and humidity, and the infestation and habitation of various vermin relating to this complaint. Said grievance was given tracking # 725870.

211.   On April 10, 2018 Melvin was sent a response stating that the grievance was upheld in part and denied in part.

212.   On April 15, 2018 Melvin appealed denial of the grievance to the Facility Manager.

213.   On May 18, 2018 Melvin was sent a response uphoding the previous Upheld in Part/
Deny in Part          response given by the Facility Manager.

214.   On May 25, 2018 Melvin appealed the denial to the Final Level at the SOIGA.

215.   On June 11, 2018 Melvin was sent a final appeal decision upholding the response.
Said grievance and all appeals to No. 725870 are placed in chronological order as Exhibit-OO.

———————————

**The Curtailment of Yard Recreation and Line Movement Grievance:**

216.   Plaintiff Butler used the prisoner grievance procedure available at SCI-
Huntingdon to try and solve the problem. On April 11, 2019 Plaitiff Butler presented the facts
of yard not being called at the times stipulated by SCI-Huntingdon Handbook, also, the
insufficient amounts of time for line movements and recreation relating to this complaint.
Said grievance was given tracking # 796674.

217.   On May 6, 2019 Plaintiff Butler was sent a response stating that the grievance was
denied.

218.   On May 7, 2019 Butler appealed the denial of the grievance to the Facility Manger.

219.   On June 3, 2019 Butler was sent a response Upholding the grievance denial by the
facility manager.

220.   On June 13, 2019 Butler appealed the denial to the final level at the SOIGA.

221.   On June 13, 2019 Butler was sent a final appeal decision upholding the response.
Said grievance and all appeals to No. 796674 are placed in chronological order as Exhibit-PP.

———————————

**Commissary Bubble Sheet Tampering Grievance:**

222.   Plaintiff Butler used the prisoner grievance procedure available at SCI-

Huntingdon to try and solve the problem. On April 3, 2019 Plaintiff Butler presented the facts of a SCI-Huntingdon Correctional Officer and/or Staff Member tampering with his commissary bubble sheet by placing additional numbers on his bubble sheet processed on March 27, 2019 and removing numbers from his (Butler's) commissary bubble sheet processed a week prior on March 22, 2019 relating to this complaint. Said grievance was given tracking # 795556.

223.    On April 30, 2019 Plaintiff Butler was sent a response stating that the grievance was denied.

224.    On May 5, 2019 Plaintiff Butler appealed the denial of the grievance to the Facility Manager.

225.    On May 23, 2019 A "Grievance Withdrawal Form" was impermissibly "forged" in the Plaintiff Butler's name of which he did not give permission to process.

226.    On May 31, 2019 Plaintiff Butler filed grievance # 803973 raising the claim of such forgery and other impermissible conduct in processing a grievance withdrawal under grievance no. 795556 of which resulted in the "reinstatement" of grievance no. 795556 on June 5, 2019.

227.    On June 5, 2019 Plaintiff Butler was sent a response upholding the grievance denial and said decision was given by the facility manager.

228.    On June 17, 2019 Butler appealed the denial to the Final Level at the SOIGA.

229.    On July 9, 2019 Butler was sent a final appeal decision upholding the response and said grievance and all appeals to no. 795556 are placed in chronological order as Exhibit-QQ.

---

**Forgery of a Grievance Withdrawal Form Grievance:**

230.    Plaintiff Butler used the prisoner grievance available at SCI-Huntingdo to try and solve the problem. On May 31, 2019 Plaintiff Butler presented the facts of receiving a "completed" Grievance Withdrawal Form on 5/31/2019 that was forged and "back-dated" for 5/23/2019 by the Defendants Stratton and Wakefield though Butler asserts that he was shown the grievance withdrawal form on 5/30/2019 that was **not** signed by Stratton coupled with the claim of violation of DOC Policy DC-ADM 804, Section 1 (A)(25) (a) through (d) relating to this complaint. Said grievance was given tracking # 803973.

231.    On June 13, 2019 Plaintiff Butler was sent a response stating that the grievance was denied.

232.    On June 28, 2019 Plaintiff Butler appealed the denial of the grievance to the facility manger.

233.    On July 22, 2019 Plaintiff Butler was sent a response upholding the grievance denial given by the facility manager.

234.    On August 9, 2019 Butler appealed the denial to the Final Level at the SOIGA.

235. On August Butler was sent a final appeal decision upholding the response and said grievance and all appeals to no. 803973 are placed in chronological order all as Exhibit-RR.

———————————————

**Cell Search Grievance:**

236.    Plaintiff Butler used the prisoner grievance procedure available at SCI-Huntingdon to try and solve the problem. On June 6, 2019 Plaintiff Butler presented the facts of being intentionally and/or deliberately selected for a "Random Cell Search" that was conducted in violation of DOC Policy DC-ADM 203 Section 1 (C)(4)(a) by Correctional Officers J. Reed and T. Emigh assigned as Search Team Members relating to this complaint and said grievance was given tracking # 806196.

237.    On June 25, 2019 Plaintiff Butler was sent a response stating that the grievance was denied.

238.    On July 8, 2019 Plaintiff Butler appealed the denial of the grievance to the facility manager.

239.    On July 31, 2019 Plaintiff Butler was sent a response upholding the grievance denial given by the facility manager.

240.    On August 19, 2019 Butler appealed the denial to the Final Level at the SOIGA.

241.    On August 29, 2019 Butler was sent a final appeal decision upholding the response and said grievance and all appeals to no. 806196 are placed in chronological order as Exhibit-SS.

## LEGAL CLAIMS

### Count 1
### Violation of Eight Amendment

242.    Paragraphs 35 - 71 are incorporated here by reference.

243.    The Eighth Amendment of the United States Constitution, as incorporated in the Fourteenth Amendment, prohibits the states and their agents from "inflicting cruel and unusual punishment."

244.    Defendants Wetzel, Smeal, Roberts, Kashmere, Bickell, Wenerowicz, Thomas, Oliver, Walters, Ralston, and Stretton deprived plaintiff Buttler of a basic human need by not accomodating him upon his request for permanent single-cell status for the duration of his sentence due to the deplorable circumstances in prison conditions that Butler is forced to endure, with the intent of depriving Butler of constitutionally guaranteed rights, in a manner that exceeds the infringements of prisoners' rights allowed by law, and with no rational connection to any measure that could advance a legitimate state or penological interest.

245.    Defendants Wetzel, Smeal, Roberts, Kashmere, Bickell, Wenerowicz, Kauffman, Ralston and Stretton deprived Plaintiff Melvin of basic human need by not accommodating him upon his request, with a permanent single-cell status for the duration of his sentence due to the deplorable circumstances in prison conditions that Melvin is forced to endure, with the intent of depriving Melvin of constitutionally guaranteed rights, in a manner that exeeds the infringement of prisoner's rights allowed by law, and with no rational connection to any measure that could advance a legitimate state or penological interest.

246.    As a direct result of the improper actions omissions and other improper conduct of the individual Defendants, both plaintiff Butler and Plaintiff Melvin have sustained injuries to their constitutional rights under the Eighth Amendment, as described herein, and will continue to be irreparably injured by the conduct of the Defendants unless this court grants the declaratory and injunctive relief which the plaintiffs here seek, among other sought damages.

### Count 2

35.

## Neglect to Prevent Deterrence from Violation of Eighth Amendment

247.   Paragraphs 35-71 are incorporated here by reference.

248.   The Eighth Amendment of the United States Constitution, as incorporated in the Fourteenth Amendment, prohibits the states and their agents from "inflicting cruel and unusual punishment."

249.   Defendants, Wetzel, Smeal, Roberts, Kashmere, Bickel and Wenerowicz knowingly removed DC-ADM 11.2.1, Section 5 (C)(1)(f) without applying the totality of circumstances and conditions within all state prisons before implementing such a sudden removal of this said policy as it deprives Plaintiff Butler of his Eighth Amendment Right to the United States Constitution to be double-called in an overcrowded, dilapidated, unsanitary state prison of which cell space falls below the requirement for both a double-cell and a single-cell and is hereby considered cruel and unusual punishment.

250.   Defendants Wetzel, Smeal Roberts, Kashmere, Bickell and Wenerowicz knowingly removed DC-ADM 11.2.1., Section 5 (C)(1)(f) without applying the totality of circumstances and conditions within all state prisons before implementing such a sudden removal of this said policy as it deprives Plaintiff Melvin of his Eighth Amendment Right to the United States Constitution to be double celled in an overcrowded, dilapidated, unsanitary state prison of which cell space falls below the requirement of   both a double-cell and a single-cell and is thereby considered cruel and unusual punishment.

251.   Defendants Wetzel, Smeal, Roberts, Kashmere, Bickell and Wenerowicz has the ultimate power to prevent of and in preventing this deprivation of Plaintiff Butler's and Plaintiff Melvin's right not to be double-called in factually deplorable conditions by defendants not removing DC-ADM 11.2.1., Section 5 (C)(1)(f), but they neglected or refused to act to prevent this deprivation of the plaintiffs' right to request to be placed in a single-cell.

252.   Because of thes violations of rights protected by the Eighth Amendment of the United States Constitution against cruel and unusual punishment, Plaintiffs sustained injuries as described herein and said injuries will continue, unless this court grants the declaratory and injunctive relief which the Plaintiffs herein seek, among other sought damages.

36.

## Count 3

### Violation of Eighth Amendment

253.    Paragraphs 72-96 are incorporated here by reference.

254.    The Eight Amendment of the United States Constitution, as incorporated in the Fourteenth Amendment it, prohibits the states and their agents from "inflicting cruel and unusual punishment."

255.    Defendants Wetzel, Kauffman, Walters, Eberling and Ewell exposed Plaintiff Butler to serious harm affecting, in all, his life, health and safety by allowing Butler's request for a redress to numerous fire safety hazards to go ignored before and after an actual fire took place in SCI-Huntingdon on 2/28/2019 and such unsafe conditions were being ignored with obvious intent of depriving Butler of constitutionally guaranteed rights, under the Eighth Amendment of the United States Constitution, in a manner that exceeds the infringements of prisoners rights allowed by law, and with no rational connection to any measure that could advance legitimate state or penological interest by such cruel and unusual punishment.

256.    Defendants Wetzel, Kauffman, Walters, Eberling and Ewell exposed Plaintiff Melvin to serious harm affecting, in all, his life, health and safety by allowing Melvin's request for a redress to numerous fire safety hazards to go ignored before and after an actual fire took place in SCI-Huntingdon on 2/28/2019 and such unsafe conditions were being ignored with obvious intent of depriving Melvin of constitutionally guaranteed rights, under the Eighth Amendment of the United States Constitution, in a manner that exceeds the infringements of prisoners rights allowed by law, and with no rational connection to any measure that could advance legitimate state or penological interest by such cruel and unusual punishment.

257.    As a direct result of the improper actions omissions and other improper conduct of the individual Defendants, both plaintiff Butler and Plaintiff Melvin have sustained injuries to their constitutional rights under the Eighth Amendment, as described herein, and will continue to be irreparably injured by the conduct of the Defendants unless this court grants the declaratory and injunctive relief which the plaintiffs here seek, among other sought damages.

### Count 4

## Violation of Eighth Amendment

258.   Paragraphs 97-107 are incorporated here by reference.

259.   The Eighth Amendment of the United States Constitution, as incorporated by the
Fourteenth Amendment, prohibits the states and their agents from "inflicting cruel and unusual
punishment."

260.   Defendants Wetzel, Kauffman, Walter, Eberling, and Ewell deprived Plaintiff Butler
of a basic human need and expose d him to serious harm by not properly responding to an
correcting Butler's request for a redress to inadequacies of an active and/or insufficient
ventilation system thereby leading to contracting airborne diseases and infections as well as
being a fire safety hazard in ways described herein, for improper purposes, with the intent of
depraving Butler of constitutionally guaranteed rights against cruel and unusual punishment
(U.S.C.A. 8 and 14) in a manner that exceeds the infringements of prisoners' rights allowed by
law, and with rational connection to any measure that could advance a legitimate state or
penological interest.

261.   Defendants Wetzel, Kauffman, Walter, Eberling, and Ewell deprived Plaintiff Melvin
of a basic human need and exposed  him to serious harm by not properly responding to an
correcting Melvin's request for a redress to inadequacies of an active and/or insufficient
ventilation system thereby leading to contracting airborne diseases and infections as well as
being a fire safety hazard in ways described herein, for improper purposes, with the intent of
depraving Melvin of constitutionally guaranteed rights against cruel and unusual punishment
(U.S.C.A. 8 and 14) in a manner that exceeds the infringements of prisoners' rights allowed by
law, and with rational connection to any measure that could advance a legitimate state or
penological interest.

262.   As a direct result of the improper actions, omissions, and other improper conduct
of the individual Defendnats, both Plaintiff Butler and Plaintiff Melvin have sustained
injuries to their constitutional rights under the Eighth Amendment, as described herein, and
will continue to be irreparably injured by the conduct of the defendants unless this court
grants the declaratory and injunctive relief which the plaintiffs herein seek, among other
sought damages.

## Count 5

## Violation of Eighth Amendment

263. Paragraphs 107 through 123 are incorporated here by reference.

264.    The Eighth Amendment of the United States Constitution, as incorporated by the Fourteenth Amendment, prohibits the states and their agents from "**inflicting** cruel and unusual punishment."

265.    Defendants Wetzel, Kauffman, Walters, and Eberling deprived Plaintiff Butler of either a basic human need or exposed Butler to serious harm by said defendants not properly correcting the overcrowding of the prison population at SCI-Huntingdon, and not properly responding to and correcting Butler's request for a redress to the existence of understaffing of guards tending tiers in ways described herein, with the intent of depriving Butler of constitutionally guaranteed rights against cruel and unusual punishment (U.S.C.A. 8 and 14), in a manner that exceeds the infringement of prisoners' rights allowed by law, and with no rational connection to any measure that could advance a legitimate state be penological interest.

266.    Defendants Wetzel, Kauffman, Walters, and Eberling deprived Plaintiff Melvin of either a basic human need or exposed Melvin to serious harm by said defendants not properly correcting the overcrowding of the prison population at SCI-Huntingdon, and not properly responding to and correcting Melvin's request for a redress to the existence of understaffing of guards tending tiers in ways described herein, with the intent of depriving Melvin of constitutionally guaranteed rights against cruel and unusual punishment (U.S.C.A. 8 and 14), in a manner that exceeds the infringement of prisoners' rights allowed by law, and with no rational connection to any measure that could advance a legitimate state be penological interest.

267.    As a direct result of the improper actions omissions, and other improper conduct of the individual Defendants, both Plaintiff Butler and Plaintiff Melvin have sustained injuries to their constitutional rights under the Eighth Amendment, as described herein, and will continue to be irreparably injured by the conduct of the Defendants unless this court grants the declaratory and injunctive relief which the  plaintiffs herein seeks, among other sought damages.

## Count 6

39.

### Violation of Eighth Amendment

268.   Paragraphs 124-133 are incorporated here by reference.

269.   The Eight Amendment of the United States Consitution, as incorporated by the Fourteenth Amendment, prohibit the states and their agents from "**inflicting** cruel and unusual punishment."

270. Defendants Kauffman, Brumbaugh, Harris and Barr deprived Plaintiff Butler of a basic human need by said defendants not providing a proper amount of recrestional time for Butler to receive exercise and receive time out of Butler's living conditions of impermiseibly limited cell space coupled with other deplorable living conditions as well as proper time allotted to attend all line movements by which both said deprivations referenced in way described herein and defendant's actions were committed with the intent of depriving Butler of constitutionally guaranteed rights against cruel and unusual punisment (U.S.C.A. 8 and 14), a manner that exceeds the infringement of prisoners' rights allowed by law, and with no rational connection to any measure that could advance a legitimate state or penological interest.

271.   As a direct result of the improper actions omissions, and other improper conduct of the individual Defendants,      Plaintiff Butler has sustained injuries to his constitutional rights under the Eighth Amendment, as described herein, and will continue to be irreparably injured by the conduct of the Defendants unless this court grants the declerstory and injunctive relief which the  plaintiffs herein seeks, among other sought damages.

### Count 7

### Violation of Eigth Amendment

272.   Paragraphs of 134-141 are incorporated here by reference.

273.   The Eight Amendment of the United States Consitution, as incorporated by the Fourteenth Amendment, prohibits the states and their agents from "**inflicting** cruel and unusual punishment."

274.   Defendants Wetzel, Kuaffman, Ralston, Bilger, Sipple, Pace, and Harker deprived Plaintiff Melvin of basic human need and exposed Melvin to serious harm by defendants not

40.

correcting the prevalent matter of various vermin living/ infesting CA-Unit where Melvin is currently housed and SCI-Huntingdon as well as a bird habitation which can lead to serious diseases such as evion flu, and others in ways described herein, with the intent of depriving Melvin of constitutionally guaranteed rights against cruel and unusual punisment (U.S.C.A. 8 and 14), a manner that exceeds the infringement of prisoners' rights allowed by law, and with no rational connection to any measure that could advance a legitimate state or penological interest, thereby, allowing and/or causing Plaintiff Melvin to sustain injuries to his constitution rights under the Eighth Amendment and will continue to be injured by Defendants conduct unless declaratory and injunctive relief is granted.

Count 8

**Violation of FIrst and Eighth Amendment**

275.    Paragraphs  142-159 are incorporated here by reference.

276.    The First Amendment of the United States Constitution, as incorporated in the Fourteenth Amendment, prohibits the states and their agents from "abridging the freedom of speech."

277.    The Eight Amendment of the United States Consitution, as incorporated by the Fourteenth Amendment, prohibits the states and their agents from "**inflicting** cruel and unusual punishment."

278.    Defendants Wskefield and Stratton  interfered with Plaintiff Butler's right to redress by way of the inmate grievance procedures to the extent that ssid Defendants forged and back-dated a Grievance Withdrawal Form in the Plaintiff Butler's name when Butler made it clear by informing Defendants by request slip that he did not intend to cancel his grievance under 795556 giving both defendants "actual notice" thereby asserting Defendants actions as violating DC-ADM 804, Section 1 (A)(25)(s) through (d) and showing rataliatory treatment for the filing of all grievances previous to this incident that are described in ways herein, with the intent of depriving Butler of constitutionally guaranteed rights against cruel and unusual punisment (U.S.C.A. 1st, 8th, and 14th), a manner that exceeds the infringement of prisoners' rights allowed by law, and with no rational connection to any measure that could advance a legitimate state or penological interest, thereby, also violating Buter's right to freedom of speech (u.s.c.A.14)

279.    As a direct result of the improper actions omissions, and other improper conduct of the individual Defendants, both Plaintiff Butler has sustained injuries to their constitutional rights under the Eighth Amendment, as described herein, and will continue to be

41.

irreparably injured by the conduct of the defendants unless this court grants the declaratory
and injunctive relief which he the Plaintiff seeks, among other sought damages.

Violation of Count 7 First and Eight Amendment

280.   Paragraphs 160 through 170 are incorporated here by reference.

281.   The First Amendment of the United States Constitution, as incorporated in the
Fourteenth Amendment, Prohibits the states and their agents from "abridging freedom of
speech."

282.   The Eighth Amendment of the United States Constitution, as incorporated in the
Fourteenth Amendment, prohibits the states and their agents from "**inflicting**" cruel and
unusual punishment."

283.   Defendants Kauffman, J. Reed, T.Emigh and Eberling retaliated against Plaintiff
Butler by intentionally searching Butler's cell for what Defendants Reed and Emigh considered
to be a "random search" though both Defendants Reed and Emigh initially stopped at Butler's
cell, saw that Butler's cell-mate was absent at the time, walked away from his cell only to
subsequently return to Butler's cell and search the cells contents in violation of DC-ADM 203,
Section 1 (C)(4)(a) as Butlers cell-mate was absent and Butler was never given or shown a
document of which he was required to sign as a "Record" showing Butler's presence during the
search as said Defendants had nothing in their hands but a trash bag  and upon entry said
Defendants mixed up Butler's legal documents causing several pages to go missing. Both
Defendants Eberling and Kauffman conspired to this retaliatory act by denying that Defendants
J. Reed and T. Emigh deliberately returned to Butler's cell, after once leaving, upon
(allegedly) reviewing camera footage of the event of which Butler initially requested to be held
pending civil action as it substantiated Butler's version of the facts and truth, and this was
all committed with the intent of depriving Butler of constitutionally guaranteed rights
against cruel and unusual punishment (U.S.C.A. 8 and 14), a manner that exceeds the
infringement of prisoners' rights allowed by law, and with no rational connection to any
measure that could advance a legitimate state or penological interest.

284.   As a direct result of the improper actions, omissions, and other improper conduct
of the individual Defendants, Plaintiff Butler has sustained injuries to his constitutional
rights under the First and Eighth Amendment as described herein, and will continue to be
irreparably injured by the conduct of the defendants unless this court grants the declaratory
and injunctive relief which the Plaintiff seeks, among other damages.

Count 10
Breach of Contract
Breach of Duty

285.   Paragraphs 35-241 are incorporated here by reference.

286.   Civil Contract Law defines Breach of Contract as, "a party's failure to perform some contracted - for or agreed - upon act, or his failure to comply with a duty imposed by law which is owed to another or to society."

287.   Each individual Defendant described herein has deprived Plaintiff Butler and Plaintiff Melvin by not reporting indication of a violation of the law, rules, and/or regulations of the Department of Corrections by either an employee as obligated within the contractual agreement of DOC Code of Ethics, Section B, subsection 14, thereby, applying to Department of Corrections (DOC) correctional employees leaving it encumbent on said Defendants herein to report institutional living conditions in violation of the law as presented by the Plaintiffs herein by grievance reports (DC-ADM 804), request slips (DC-135 A Form) camera footage requested by Plaintiffs, ect., or any other documented proof of a violation of law or directives and failure by said Defendants was executed with intent of depriving Plaintiff Butler and Plaintiff Melvin of constitutionally guaranteed rights to petition the Government for redress of grievances under the First Amendment of the U.S. Constitution, in a manner that exceeds the infringement of prisoner's rights allowed by law and with no rational connection to any measure that could advance a legitimate state or penological interest.

288.   As a direct result of the improper actions, omissions, and other improper conduct of the individual Defendants, Plaintiffs Butler and Melvin have sustained injuries to their constitutional rights under Civil Contractual Law and the First Amendment as described herein, and will continue to be irreparably injured by the conduct of the Defendants unless this court grants the declaratory and injunctive relief which the Plaintiffs seek, among other sought damages. It is also injuries to plaintiffs' Civil Liability Rights.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiffs request that the Honorable Court:

A.   Award declaratory relief to Plaintiffs by finding that the Defendants Actions violated rights that are protected by the First Amendment of the Constitution of the United States;

43.

B. Award declaratory relief to Plaintiffs by finding that the Defendants actions violated rights that are protected by the Eighth Amendment of the Constitution of the United States;

C.     Award declaratory relief to Plaintiffs by finding that the Defendants Actions violated rights that are protected by Civil Contract Law;

D.     Award injunctive relief to Plaintiffs by ordering that Defendants correct the fire safety hazards by way of reconstruction that brings the design of SCI-Huntingdon up to twentieth century standards;

E.     Award injunctive relief to the Plaintiffs by ordering the cessation of double-celling Plaintiffs within SCI-Huntingdon;

F.     Award injunctive relief to Plaintiffs by ordering the necessary modifications resulting in a full functional and permanently operational ventilation system within SCI-Huntingdon;

G.     Award injunctive relief to Plaintiffs by ordering the cessation of overcrowding the prison at SCI-Huntingdon;

H.     Award injunctive relief to Plaintiffs by ordering the cessation of understaffing the prison at SCI-Huntingdon;

I.     Award injunctive relief to Plaintiffs by ordering that the recreational yard schedules are followed as to afford 2 full hours of yard 3 times a day within SCI-Huntingdon;

J.     Award injunctive relief to Plaintiffs by ordering all line movements for prison are to run on a 7 minute time allotment within SCI-Huntingdon;

K.     Award injunctive relief to Plaintiffs by ordering the full extermination of all vermin, insects and bird habitations within SCI-Huntingdon and full and consistent adherence to DOC Policy DC-ADM-203, Section 1(c)(4)(a) and DC-ADM 804, Section 1 (A)(25)(a) through (d).

L.     Award nominal damages to Plaintiffs against the Defendants in the amount of $9,000;

M.     Award compensatory damages to Plaintiffs against the Defendants in the amount of

$350,000;

N.     Award punitive damages to Plaintiffs against the Defendants in the amount of $350,000;

O.     Award the cost of this action to Plaintiffs including but not limited to those available under 42 U.S.C. § 1988;

P.     Award such relief as to include but not limited to to immediate release of Plaintiffs from DOC custody in accordance with 18 U.S.C. § 3626 (a)(3)(B)(C)(D) and 28 U.S.C. § 2284;

Q.     Plaintiffs request to reserve the right to amend this said complaint as to present additional Defendants and claims of living conditions within SCI-Huntingdon and retaliatory treatment of which grievance exhaustions are still pending as well as to amend in order to present the full name of individual defendants mentioned herein of which was not provided by SCI-Huntingdon despite Plaintiffs' due diligence and efforts (See Exhibit-TT).

R.     Award such other and further relief as this court may deem appropriate;

**Respectfully Submitted,**

**Shariff Butler**
**FM4733**

**Jeremey Melvin**
**GB7532**

**SCI Huntingdon**
**1100 Pike Street**
**Huntingdon, Pa 16654**

**DATE:** 12 / 15 / 2019

45.

## VERIFICATION

I have read the foregoing complaint and hereby verify that the matters alleged therein are true except as to matters alleged upon information and belief, and , as those, I believe them to be true. I certify under penalty of perjury that the foregoing is true and correct.

Executed at: SCI-Huntingdon,
        Huntingdon, PA 16654

Date _12_ / _15_ / _2019_

_____      _____
  Shariff Butler                         Jeremey Malvin

Clerk of Court
U.S. District Court Middle District of PA
235 N. Washington Avenue
Scranton, PA 18501-1148

46.

United States District Court
For the Middle District of Pennsylvania
Clerk of Court
235 N. Washington Avenue
Scranton, PA 18501-1148


Dear Clerk of Court,

Greetings. I have enclosed the letter correspondent to inform the court that there has been an error in the civil complaint forwarded to this office dated December 11, 2019. Due to such errors the underlined Plaintiffs Shariff Butler and Jeremey Melvin humbly request that this office disregard the civil complaint dated "December 11, 2019" by way of cancelling the act of processing that particular complaint (12/11/19). Instead, said Plaintiffs humbly request that this enclosed Civil Complaint dated "December 15, 2019" be properly processed in its place. Plaintiffs have also served a Summons which is also enclosed and an In Forma Pauperis that will arrive in a separate envelope. The plaintiffs apologize for any mishap that this may cause and pray that they may be forgiven. We thank you for your assistance. Please have a great day and a blessed holiday. This complaint is in 3 envelopes.

DATE: 12/15/2019

Shariff Butler
FM4782
1100 Pike Street
Huntingdon, PA 16654

Respectfully Submitted,

Jeremey Melvin
CB7532
1100 Pike Street
Huntingdon, PA 16654

United States District Court

For the Middle District of Pennsylvania

Clerk of Court

235 N. Washington Avenue

Scranton, PA 18501-1148

Dear Clerk of Court,

Greetings. I have enclosed the letter correspondent to inform the court that there has been an error in the civil complaint forwarded to this office dated December 11, 2019. Due to such errors the underlined Plaintiffs Shariff Butler and Jeremey Melvin humbly request that this office disregard the civil complaint dated "December 11, 2019" by way of cancelling the act of processing that particular complaint (12/11/19). Instead, said Plaintiffs humbly request that this enclosed Civil Complaint dated "December 15, 2019" be properly processed in its place. Plaintiffs have also sent a Summons which is also enclosed and an In Forma Pauperis that will arrive in a separate envelope. The plaintiffs apologize for any mishap that this may cause and pray that they may be forgiven. We thank you for your assistance. Please have a great day and a blessed holiday. This complaint is in 3 envelopes.

DATE: 12/15/2019

Respectfully Submitted,

Shariff Butler
FM4733
1100 Pike Street
Huntingdon, PA 16654

Jeremey Melvin
GB7532
1100 Pike Street
Huntingdon, PA 16654

Sharif Scates
FM4735
1100 Pike Street
Huntingdon, PA 16654-1112

CERTIFIED MAIL

7018 1130 0000 3679 1180

INMATE MAIL
PA DEPARTMENT
OF CORRECTIONS

RECEIVED
SCRANTON

DEC 2 0 2019

DEPUTY CLERK

U.S. District Court
For the Middle District of Pennsylvania
Clerk of Court
235 N. Washington Avenue
Scranton, PA 18501-1148

1 of 3