IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SHARIFF BUTLER and
JEREMEY MELVIN,

                    Plaintiffs,

          v.

KEVIN KAUFFMAN, *et al.*,

                    Defendants.

No. 4:19-CV-02171

(Chief Judge Brann)

**MEMORANDUM OPINION**

**JULY 27, 2022**

*Pro se* Plaintiffs Shariff Butler ("Butler") and Jeremey Melvin ("Melvin"),
who are incarcerated in the State Correctional Institution-Huntingdon ("SCI-
Huntingdon"), allege various civil rights violations by SCI-Huntingdon officials.
Defendants have moved for summary judgment. For the reasons that follow, the
motion for summary judgment will be granted in part and denied in part.

## I.     BACKGROUND

Plaintiffs initiated this case through the filing of a complaint under 42 U.S.C.
§ 1983 on December 15, 2019, which the Court received and docketed on
December 20, 2019.[1] The complaint raises civil rights claims arising from (1) SCI-
Huntingdon's purported refusal to grant Plaintiffs single-cell status, (2) SCI-

---

[1]   Doc. 1.

Huntingdon's alleged failure to mitigate fire safety risks, (3) SCI-Huntingdon's alleged denial of recreation time and time in the prison yard, (4) SCI-Huntingdon's allegedly inadequate ventilation system, (5) alleged overcrowding and understaffing in SCI-Huntingdon, (6) an alleged infestation of vermin in SCI-Huntingdon, and (7) alleged retaliation against Plaintiff Butler.[2]  The complaint raises claims for violation of the First and Eighth Amendments as well as state law claims for breach of contract and "breach of duty."[3]

I dismissed the complaint in part on September 2, 2020.[4]  Specifically, I dismissed all claims against Defendants Wetzel, Moore Smeal, Roberts, Kashmere, Bickell, Wenerowicz, Varner, Moore, Oliver, Thomas, Brumbaugh, Eberling, Harker, and Barr for Plaintiffs' failure to allege their personal involvement and dismissed Plaintiffs' claims relating to Butler's single-cell status as untimely.[5]  I otherwise allowed the complaint to proceed and ordered service of process as to the remaining Defendants.  Plaintiffs appealed my partial dismissal order to the United States Court of Appeals for the Third Circuit.[6]  The Third Circuit dismissed

---

[2]  *Id.*
[3]  *Id.*
[4]  Doc. 18.
[5]  *Id.*
[6]  Doc. 23.

the appeal for lack of appellate jurisdiction on February 23, 2021.[7]  Defendants

then answered the complaint on May 7, 2021.[8]

Plaintiffs filed an amended complaint without leave of court or Defendants'

consent on August 2, 2021.[9]  I struck the amended complaint from the record for

Plaintiffs' failure to comply with Federal Rule of Civil Procedure 15 on September

20, 2021.[10]  I have additionally resolved numerous discovery and sanctions

motions since the close of pleading in this case.[11]  The case is presently before me

on Defendants' motion for summary judgment, which was filed on January 20,

2022, after the close of discovery.[12]  Briefing on the motion for summary judgment

is complete and it is ripe for the Court's disposition.[13]

## II.   STANDARD OF REVIEW

Summary judgment is appropriate where "the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law."[14]  "Facts that could alter the outcome are 'material facts,' and

disputes are 'genuine' if evidence exists from which a rational person could

---

[7]  Doc. 31.
[8]  Doc. 38.  Given that Wetzel, Moore Smeal, Roberts, Kashmere, Bickell, Wenerowicz, Varner, Moore, Oliver, Thomas, Brumbaugh, Eberling, Harker, and Barr have been dismissed from the case, I will refer to the remaining Defendants simply as "Defendants" throughout the remainder of this opinion.
[9]  Doc. 42.
[10]  Doc. 64.
[11]  *See* Docs. 53, 65, 82, 102, 113.
[12]  Doc. 94.
[13]  *See* Docs. 97, 124.
[14]  Fed. R. Civ. P. 56(a).

conclude that the position of the person with the burden of proof on the disputed issue is correct."[15]  "A defendant meets this standard when there is an absence of evidence that rationally supports the plaintiff's case."[16]  "A plaintiff, on the other hand, must point to admissible evidence that would be sufficient to show all elements of a prima facie case under applicable substantive law."[17]

"The inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits."[18]  Thus, "if the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on a lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented."[19] "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."[20]  "The judge's inquiry, therefore unavoidably asks . . . 'whether there is [evidence] upon which a jury can properly proceed to find a

---

[15]   *Clark v. Modern Grp. Ltd.*, 9 F.3d 321, 326 (3d Cir. 1993) (first citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); and then citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).
[16]   *Clark*, 9 F.3d at 326.
[17]   *Id.*
[18]   *Anderson*, 477 U.S. at 252.
[19]   *Id.*
[20]   *Id.*

verdict for the party producing it, upon whom the onus of proof is imposed."[21]   The evidentiary record at trial, by rule, will typically never surpass that which was compiled during the course of discovery.

"A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."[22]   "Regardless of whether the moving party accompanies its summary judgment motion with affidavits, the motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied."[23]

Where the movant properly supports his motion, the nonmoving party, to avoid summary judgment, must answer by setting forth "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."[24]   For movants and nonmovants alike, the assertion "that a fact cannot be or is genuinely disputed" must be supported by: (i) "citing to particular parts of materials in the record" that go beyond "mere

---

[21]   *Id.* (quoting *Schuylkill & Dauphin Imp. Co. v. Munson*, 81 U.S. 442, 447 (1871)).
[22]   *Celotex*, 477 U.S. at 323 (internal quotations omitted).
[23]   *Id.*
[24]   *Anderson*, 477 U.S. at 250.

allegations"; (ii) "showing that the materials cited do not establish the absence or presence of a genuine dispute"; or (iii) "showing . . . that an adverse party cannot produce admissible evidence to support the fact."[25]

"When opposing summary judgment, the non-movant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant."[26]  Moreover, "if a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion."[27]  On a motion for summary judgment, "the court need consider only the cited materials, but it may consider other materials in the record."[28]

Finally, "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."[29]  "There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."[30]  "If the evidence is merely colorable . . . or is not significantly probative, summary judgment may be granted."[31]

---

[25]  Fed. R. Civ. P. 56(c)(1).
[26]  *Port Auth. of N.Y. & N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 233 (3d Cir. 2003).
[27]  Fed. R. Civ. P. 56(e)(2).
[28]  Fed. R. Civ. P. 56(c)(3).
[29]  *Anderson*, 477 U.S. at 249.
[30]  *Id.*
[31]  *Id.* at 249-50 (internal citations omitted).

## III.   MATERIAL FACTS

Local Rule 56.1 requires a party moving for summary judgment to submit "a separate, short and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried."[32]   In this case, Defendants filed a statement of material facts as required by Local Rule 56.1, and Plaintiffs have appropriately responded to the statement as required by Local Rule 56.1.   The below statement of material facts is taken from the parties' statements.   Where Plaintiffs have accepted or not contradicted a factual assertion made by Defendants, I will cite to the parties' statements directly.

Plaintiffs Butler and Melvin are both incarcerated in SCI-Huntingdon.[33] Butler has been incarcerated in the prison since 2003 and Melvin has been incarcerated in the prison since 2007.[34]   Melvin is currently housed in a single cell without a cellmate and has been in a single cell since before he filed this lawsuit.[35]

There have been five fire incidents in SCI-Huntingdon during Butler and Melvin's incarceration, which occurred on May 3, 2013, February 28, 2019, April 14, 2020, August 30, 2020, and January 9, 2021.[36]   Butler was evacuated from his

---

[32]   M.D. Pa. L.R. 56.1.

[33]   Doc. 95 ¶¶ 1-2; Doc. 123 ¶¶ 1-2.

[34]   Doc. 95 ¶¶ 3-4; Doc. 123 ¶¶ 3-4.

[35]   Doc. 95 ¶¶ 5-6; Doc. 123 ¶¶ 5-6; Doc. 96-1 at 10-13.

[36]   *See* Doc. 95 ¶¶ 8; Doc. 123 ¶ 8.   Defendants' statement of material facts only mentions three fire incidents, but Plaintiffs note that fires additionally occurred on May 3, 2013 and April 14, 2020.   *Id.*   I will view the facts in the light most favorable to Plaintiffs and accept their contention that there have been five fire incidents during their incarceration.

cell on January 9, 2021, but no evacuations occurred with respect to the February 28, 2019 and August 30, 2021 fire incidents.[37]  Butler suffered smoke inhalation during the January 9, 2021 fire, but otherwise did not suffer any injuries during any of the fires.[38]  He did not seek medical attention for the smoke inhalation.[39]

Butler has been aware of the ventilation issues that give rise to his Eighth Amendment claim for approximately seventeen years, but he did not file any grievance regarding the ventilation system until December 7, 2017.[40]  Melvin has been aware of the ventilation issues that give rise to his claim since 2007, but did not file a grievance about the ventilation issues until March 11, 2018.[41]  Melvin has also been aware of the bird and insect problems in SCI-Huntingdon that give rise to his Eighth Amendment claim since 2007.[42]

Butler acknowledges that he is given recreation time in SCI-Huntingdon.[43]  Butler's allegation that he is not given a sufficient amount of recreation time is based on a state of affairs that has existed since he began his incarceration at SCI-Huntingdon in 2003.[44]  Butler did not file a grievance complaining about the lack

---

[37]  Doc. 95 ¶¶ 9-10; Doc. 123 ¶¶ 9-10.  As noted above, Defendants' statement of material facts does not mention the May 3, 2013 or April 14, 2020 fires, and accordingly does not address whether evacuations occurred during those fires.

[38]  *See* Doc. 95 ¶ 11; Doc. 123 ¶ 11; Doc. 96-3 at 13-14.

[39]  *See* Doc. 95 ¶ 12; Doc. 123 ¶ 12; Doc. 96-3 at 14.

[40]  *See* Doc. 95 ¶ 13; Doc. 123 ¶ 13; Doc. 96-3 at 15.

[41]  *See* Doc. 95 ¶ 14; Doc. 123 ¶ 14; Doc. 96-1 at 52-53.

[42]  *See* Doc. 95 ¶ 36; Doc. 123 ¶ 36; Doc. 96-1 at 61-62.

[43]  Doc. 95 ¶ 19; Doc. 123 ¶ 19.

[44]  Doc. 95 ¶ 24; Doc. 123 ¶ 24; Doc. 96-3 at 27.

of recreation time until April 11, 2019.[45]  Melvin claims that he has been denied

yard time since 2007, but he has never filed a grievance about a lack of yard time.[46]

Butler filed a grievance on April 3, 2019 complaining that someone had

filled in additional bubbles on his prison commissary sheet.[47]  Defendant

Administrative Officer Andrea Wakefield went to Butler's cell on May 23, 2019 to

allow Butler to examine the relevant commissary sheet.[48]  Butler disputes whether

the commissary sheet that Wakefield brought with her was the original sheet that

gave rise to Butler's grievance.[49]  After Butler examined the commissary sheet, his

grievance was withdrawn.[50]  Butler subsequently requested that the grievance be

reinstated.[51]  The request was granted, and Butler then pursued the grievance

through all stages of administrative review.[52]  He was denied relief at all  stages.[53]

## IV.   ANALYSIS

Plaintiffs' constitutional claims are brought under 42 U.S.C. § 1983, which

provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation,
> custom, or usage, of any State or Territory or the District of Columbia,
> subjects, or causes to be subjected, any citizen of the United States or
> other person within the jurisdiction thereof to the deprivation of any

---

[45]  *Id.*
[46]  Doc. 95 ¶¶ 26-27; Doc. 123 ¶¶ 26-27.
[47]  Doc. 95 ¶ 28; Doc. 123 ¶ 28; Doc. 96-5 at 1.
[48]  Doc. 95 ¶ 29; Doc. 123 ¶ 29.
[49]  Doc. 123 ¶ 29.
[50]  Doc. 95 ¶¶ 30-31; Doc. 123 ¶¶ 30-31.  Butler disputes whether he voluntarily withdrew the grievance or whether prison staff initiated the withdrawal.  Doc. 123 ¶ 30.
[51]  Doc. 95 ¶ 31; Doc. 123 ¶ 31.
[52]  Doc. 95 ¶¶ 31-32; Doc. 123 ¶¶ 31-32.
[53]  *Id.*

rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

42 U.S.C. § 1983.

"To establish a claim under 42 U.S.C. § 1983, [a plaintiff] must demonstrate a violation of a right secured by the Constitution and the laws of the United States [and] that the alleged deprivation was committed by a person acting under color of state law."[54]  "The first step in evaluating a section 1983 claim is to 'identify the exact contours of the underlying right said to have been violated' and to determine 'whether the plaintiff has alleged a deprivation of a constitutional right at all.'"[55]

Defendants argue that summary judgment is appropriate because Melvin's single cell claim is moot and Melvin lacks standing to raise the claim, because Plaintiffs' yard, recreation, ventilation, and vermin claims are untimely, and because Plaintiffs otherwise fail to establish constitutional violations.[56]  Defendants additionally seek summary judgment with respect to Plaintiffs' state law claims.  I address Defendants' arguments below.

### A.    Timeliness

Defendants seek summary judgment as to Plaintiffs' yard, recreation, ventilation, and vermin claims because the claims are untimely.[57]  Defendants'

---

[54]  *Moore v. Tartler*, 986 F.2d 682, 685 (3d Cir. 1993).
[55]  *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998)).
[56]  Doc. 97.
[57]  Doc. 97 at 5-7.

argument is based on the fact that Plaintiffs were aware of these conditions when they began their incarceration in SCI-Huntingdon, which was well before the expiration of the statute of limitations.[58]   Plaintiffs argue in opposition that the claims are timely under the continuing violations doctrine.[59]   Plaintiffs additionally argue that the statute of limitations was tolled by their attempts to exhaust administrative remedies and that the limitations period therefore does not expire until "two years from the date that the final exhaustion of the administrative remedy process is rendered."[60]

I agree with Defendants that Plaintiffs' yard, recreation, ventilation, and vermin claims are untimely.  Plaintiffs' claims are brought pursuant to 42 U.S.C. § 1983 and are therefore governed by Pennsylvania's two-year statute of limitations for personal injury actions.[61]   The limitations period for a § 1983 claim begins to run from the point at which the plaintiff knew or should have known of the injury that gave rise to the claim.[62]   The record reflects that Plaintiffs Butler and Melvin were aware of the facts giving rise to their yard, recreation, ventilation, and vermin claims at the time they began their incarceration in SCI-Huntingdon, in 2003 and

---

[58]   *Id.*
[59]   Doc. 124 at 11-13.
[60]   *Id.*
[61]   *Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017).
[62]   *Id.* (citing *Sameric Corp. of Del. v. City of Phila.*, 142 F.3d 582, 599 (3d Cir. 1998)).

2007, respectively.[63]  Plaintiffs did not file suit in this case until 2019, making their claims patently untimely.

Plaintiffs' reliance on the continuing violations doctrine is misplaced.  The continuing violations doctrine recognizes that a plaintiff's claim is timely if the defendant's allegedly wrongful actions are part of a continuing practice, the last act of which occurred before the expiration of the limitations period.[64]  The doctrine does not apply when the defendant's allegedly wrongful conduct has a "degree of permanence which should trigger his awareness of and duty to assert his rights"[65] or "when the plaintiff 'is aware of the injury at the time it occurred.'"[66]  Both circumstances are present here: Plaintiffs' yard, recreation, ventilation, and vermin claims are based on circumstances that have existed since the beginning of Plaintiffs' incarceration in SCI-Huntingdon, and Plaintiffs have been aware of their alleged injuries during that entire period of time.

I also reject Plaintiffs' argument that the limitations period is tolled by their administrative exhaustion attempts.  Plaintiffs are correct that the two-year limitations period for the filing of a § 1983 action is tolled while plaintiffs attempt

---

[63]  *See* Doc. 95 ¶¶ 13-14, 19, 24, 26-27, 36; Doc. 123 ¶¶ 13-14, 19, 24, 26-27, 36; Doc. 96-1 at 15, 27, 52-53, 61-62.

[64]  *Montanez v. Sec'y Pa. Dep't of Corrs.*, 773 F.3d 472, 481 (3d Cir. 2014).

[65]  *Wisniewski*, 857 F.3d at 158 (internal alterations omitted) (quoting *Cowell v. Palmer Twp.*, 263 F3d 286, 292 (3d Cir. 2001)).

[66]  *Montanez*, 773 F.3d at 481 (quoting *Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*, 331 F.3d 406, 417 n.6 (3d Cir. 2003)).

to exhaust administrative remedies.[67]  But Plaintiffs' argument misconstrues the effect of tolling a limitations period: tolling a limitations period simply pauses it or holds it in abeyance; it does not restart the limitations period from zero.[68]  The record here indicates that Plaintiffs were aware of the facts giving rise to their yard, recreation, ventilation, and vermin claims at the time they began their incarceration but did not file any grievances relevant to those claims until many years later in 2017, 2018, or 2019.  Thus, because the limitations period for their § 1983 claims had already run years before they filed the grievances, any tolling arising from the grievances would not save their already untimely claims.  Accordingly, I will grant Defendants' motion for summary judgment with respect to Plaintiffs' yard, recreation, ventilation, and vermin claims.  Having reached this conclusion, I will not address Defendants' other arguments with respect to these claims.

### B.   Melvin's Single Cell Claim

Defendants argue they are entitled to summary judgment as to Melvin's claim seeking a single cell because he has a single cell and has had one throughout all stages of this litigation, including when he filed the complaint.[69]  Defendants

---

[67]  *See Pearson v. Sec'y Dept. of Corrs.*, 775 F.3d 598, 603 (3d Cir. 2015).

[68]  *Cf. Artis v. District of Columbia*, 583 U.S. __, 138 S. Ct. 594, 601 (2018) ("Ordinarily, 'tolled,' in the context of a time prescription like § 1367(d), means that the limitations period is suspended (stops running) while the claim is *sub judice* elsewhere, then starts running again when the tolling period ends, picking up where it left off."); *Lozano v. Montoya Alvarez*, 572 U.S. 1, 10 (2014) (noting that equitable tolling doctrine "pauses the running of" a statute of limitations).

[69]  Doc. 97 at 7-9.

argue that because Melvin has a single cell, he lacks standing to seek a single cell and his claim for a single cell is moot.[70]

I find that Melvin lacks standing to bring his single cell claim. To establish standing, a plaintiff must show (1) that he suffered an injury; (2) that the injury is fairly traceable to the conduct of the defendant; and (3) that the court could redress the injury.[71] In this case, I cannot grant Melvin any redress for his claim: he seeks a single cell and he has already been granted a single cell. Although Plaintiffs' complaint contains a generalized request for damages as to all of their claims,[72] the factual allegations giving rise to Melvin's single cell claim do not provide any basis for damages and instead focus only on the injunctive relief of Melvin obtaining a single cell.[73] Thus, I will grant summary judgment to Defendants as to Melvin's single cell claim because he lacks standing for this claim.

## C.    Remaining Deliberate Indifference Claims

Defendants seek summary judgment on the merits as to Plaintiffs' fire safety, overcrowding, and understaffing claims, all of which sound in deliberate indifference to Plaintiffs' conditions of confinement under the Eighth Amendment. To succeed on such a claim, a plaintiff must show that: "(1) he was incarcerated under conditions imposing a substantial risk of serious harm, (2) the defendant-

---

[70]  *Id.*
[71]  *TransUnion LLC v. Ramirez*, 594 U.S. __, 141 S. Ct. 2190, 2204 (2021).
[72]  *See* Doc. 1 at 44-45.
[73]  *See id.* at 11-13.

official was deliberately indifferent to that substantial risk to his health and safety, and (3) the defendant official's deliberate indifference caused him harm."[74]  I analyze these claims below.

### 1.    Fire Safety Claim

Plaintiffs' fire safety claim is based on the allegedly "antiquated designs" of cells in SCI-Huntingdon and Plaintiffs' allegation that there was a fire in SCI-Huntingdon's dining hall kitchen on February 28, 2019.[75]  Plaintiffs allege that no alarm was sounded during the fire, that inmates were locked in their cells during the fire, and that no evacuation took place.[76]

Defendants argue that they are entitled to summary judgment as to the fire safety claim because Plaintiffs cannot produce any evidence of a substantial risk of harm to Plaintiffs or any evidence that Defendants were deliberately indifferent to such a risk.[77]  Plaintiffs argue to the contrary that they informed prison staff through grievances that SCI-Huntingdon was understaffed, that it lacked a universal/master locking system for the cells, that it had an inadequate ventilation system, that it did not have smoke exhaust fans, that it did not have any fire equipment to combat major fires in the prison, that it did not have an evacuation protocol for fires, that fire alarms sometimes did not sound, and that fire doors

---

[74]  *See Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2015).
[75]  *See* Doc. 1 at 13-16.
[76]  *Id.*
[77]  Doc. 97 at 10-11.

were non-functional.[78]  Plaintiffs note that these conditions "are considered

unconstitutional fire safety hazards" under the Western District of Pennsylvania

and Third Circuit's opinions in *Tillery v. Owens*.[79]  Plaintiffs also note that

Defendants never denied that such fire safety hazards existed in responding to

Plaintiffs' grievances.[80]  Plaintiffs cite a number of declarations from themselves

and other SCI-Huntingdon inmates as evidence to support their fire safety claim.[81]

I will grant the motion for summary judgment with respect to the fire safety

claim.  Assuming, *arguendo*, that all of the conditions alleged by Plaintiffs are

actually present in SCI-Huntingdon, Plaintiffs have still not presented any evidence

to show that these conditions create a substantial risk of serious harm.  Plaintiffs

have not presented any expert testimony or any other evidence as to what fire

safety measures SCI-Huntingdon should implement or why the existing fire safety

measures are inadequate, and absent such evidence there is no basis for a

reasonable finder of fact to conclude that there is a substantial risk of serious harm.

Instead of offering expert testimony or other evidence as to what fire safety

measures SCI-Huntingdon should implement, Plaintiffs appear to rely entirely on

the findings of fact by the district court and affirmed by the circuit court in *Tillery*

---

[78]  Doc. 124 at 16-18.
[79]  *See Tillery v. Owens*, 719 F. Supp. 1256 (W.D. Pa. Aug. 15, 1989); *Tillery v. Owens*, 907 F.2d 418 (3d Cir. 1990).
[80]  Doc. 124 at 17-18.
[81]  *See* Doc. 124 at 18.  Plaintiffs' brief cites the declarations as docket number 84, but Plaintiffs have subsequently noted that this citation was erroneous.  *See* Docs. 128, 130.  The declarations in support of Plaintiffs' claim are actually docketed at docket number 56.  *See* Doc. 56.

*v. Owens*, where the court found that numerous fire safety hazards violated the Eighth Amendment.[82]   That case, however, concerned the conditions of confinement in the State Correctional Institution-Pittsburgh ("SCI-Pittsburgh") in the late 1980s and early 1990s, and the court relied heavily on the testimony of an expert witness in reaching its factual conclusions.   Findings of fact from a different case concerning the conditions of confinement in a different prison decades before the facts of this case cannot simply be transplanted to the present case, and nothing in the Western District or Third Circuit's opinions in *Tillery* create *per se* rules of constitutionality that must be followed in this case.   Accordingly, because Plaintiffs have offered no evidence of a substantial risk of serious harm, I will grant the motion for summary judgment with respect to the fire safety claim.

## 2.   Overcrowding and Understaffing

Defendants argue that they are entitled to summary judgment as to Plaintiffs' overcrowding and understaffing claims because Plaintiffs do not have any evidence of overcrowding or understaffing.[83]

With respect to the overcrowding claim, Plaintiffs argue that publicly available data from the Pennsylvania Department of Corrections indicates that SCI-Huntingdon has an inmate capacity of 1,700 inmates but that evidence of record shows that the prison housed more than 1,700 inmates in 2016, 2017, 2019,

---

[82]   *See* Doc. 124 at 16-18; *Tillery*, 719 F. Supp. at 1256; *Tillery*, 907 F.2d at 418.
[83]   Doc. 97 at 12-13.

2020, and 2021.[84]  Plaintiffs specifically cite an undated memo from SCI-Huntingdon's general manager Dianna Huffstickler to one of the prison's accountants, Elizabeth Stone, regarding cable TV charges for the inmate population in February 2016, which indicates that the prison had an average population of 2,200 inmates in that month.[85]  Plaintiffs also cite monthly account statements for the years in question from Butler's prisoner trust fund account.[86]  Plaintiffs contend that these account statements show that SCI-Huntingdon's population exceeded 1,700 prisoners during the relevant period, but this appears to be based solely on the page numbers on the account statements,[87] and Plaintiffs have not provided any evidence to support the inference that page numbers on monthly account statements correspond to the total population of the prison.

Plaintiffs cite several other exhibits in support of their overcrowding claim. First, they cite a legal brief that SCI-Huntingdon filed with the Pennsylvania Department of Labor and Industry in 1994, which states that SCI-Huntingdon had a population of approximately 2,100 inmates at that time.[88]  Second, they cite a grievance that Butler filed in 2019 complaining about a lack of clean laundry in the prison and the prison's response to the grievance, which indicates that there was a temporary shortage of socks due in part to "higher than normal arrivals off the

---

[84]  Doc. 124 at 23.
[85]  *See id.*; Doc. 122-1 at 6.
[86]  Doc. 124 at 23; Doc. 122-1 at 7-12.
[87]  *See, e.g.*, Doc. 122-1 at 7 ("Page 536 of 2062").
[88]  *See* Doc. 124 at 23-24; Doc. 122-6.

vans."[89]  Third, they cite DOC statistics as to the number of fights and assaults in DOC facilities from January 1, 2015 through March 31, 2016, which indicate that SCI-Huntingdon had the most aggravated assaults, the most inmate fights, and the second most inmate assaults among all DOC facilities during that period.[90]  Fourth, they cite declarations from themselves and several other SCI-Huntingdon inmates attesting to overcrowding in SCI-Huntingdon.[91]  Finally, they cite unrelated court opinions in *Tillery*[92] and *Molina v. Dep't of Corrs.*[93]

I will grant the motion for summary judgment with respect to the overcrowding claim as Plaintiffs have not put forth sufficient evidence to establish unconstitutional overcrowding.  To begin, Plaintiffs rely on publicly available information from the DOC to establish that SCI-Huntingdon's capacity is 1,700 inmates, but my review of publicly available information indicates that SCI-Huntingdon's capacity is actually 2,106 inmates.[94]

Plaintiffs have also not produced any evidence from which a reasonable finder of fact could conclude that the population of SCI-Huntingdon is

---

[89]  *See* Doc. 124 at 24; Doc. 122-1 at 20.

[90]  *See* Doc. 124 at 24; Doc. 122-1 at 21.  Plaintiffs contend that SCI-Huntingdon led in all three of these categories, *see* Doc. 124 at 24, but their attached exhibit indicates that SCI-Muncy had more inmate assaults than SCI-Huntingdon during the relevant period.  *See* Doc. 122-1 at 21.

[91]  *See* Doc. 124 at 24; Doc. 120-3.

[92]  907 F.2d at 418.

[93]  No. 4:21-CV-00038, 2021 WL 4450016 (M.D. Pa. June 8, 2021) (Mehalchick, M.J.), *report and recommendation adopted*, No. 4:21-CV-00038, 2021 WL 4439486 (M.D. Pa. Sept. 28, 2021) (Brann, C.J.).

[94]  *See Pennsylvania Department of Corrections Monthly Population Report as of June 30, 2022*, DOC https://www.cor.pa.gov/About%20Us/Statistics/Documents/Current%20Monthly %20Population.pdf (last visited July 19, 2022).

unconstitutionally overcrowded: the population statistics they cite from 1994 and 2016 are outside the limitations period for their claim and are therefore irrelevant, and Plaintiffs have not produced any evidence to support the inference that the page numbers on Butler's monthly account statements indicate the prison's total population.  DOC statistics on the number of fights and assaults in SCI-Huntingdon from 2015-2016 are irrelevant as that period of time is outside of the limitations period, and nothing in the statistics indicates that the number of fights and assaults is caused by, or indicative of, overcrowding.[95]  Plaintiffs' attached declarations similarly do not establish overcrowding, as they do not provide any evidence beyond the declarants' conclusory assertions that the prison is overcrowded.[96]  Although the grievance response indicating that there was a temporary shortage of socks due in part to "higher than normal arrivals off the vans" provides a scintilla of evidence in support of Plaintiffs' overcrowding claim,[97] this is not sufficient for the case to go to trial.[98]

---

[95]  *See* Doc. 122-1 at 21.

[96]  *See* Doc. 120-3 at 5 (declaration of Shariff Butler) ("There is a deplorable overcrowding issue within SCI-Huntingdon"); *id.* at 21 (declaration of Jeremey Melvin) ("The understaffing issue is a bad pairing for overcrowding that only compound the issues"); *id.* at 36 (declaration of Raheem Henderson) ("All yards and line movements were called late due to overcrowding. . . "); *id.* at 42 (declaration of Tasai Betts) ("Due to overcrowding issues, all yards and line movements were called late. . . ."); *id.* at 48 (declaration of Vernon Robbins) ("Overcrowding of the prison also increases the difficulty of evacuation in the event of a fire emergency . . . [and] causes all line movements to be ran late").

[97]  *See* Doc. 122-1 at 20.

[98]  *Anderson*, 477 U.S. at 252.

Finally, the opinions in *Tillery* and *Molina* do not provide a sufficient basis to defeat Defendants' motion for summary judgment.  As noted above, *Tillery* is irrelevant because it concerned the conditions of confinement in a different prison approximately three decades before the facts of this case.[99]  *Molina* addressed a motion for class certification brought by several SCI-Huntingdon inmates on behalf of a putative class of all inmates who were incarcerated in SCI-Huntingdon after December 30, 2018.[100]  United States Magistrate Judge Karoline Mehalchick recommended that the motion be denied because there were not questions of law or fact common to all members of the proposed class.[101]  I adopted that recommendation and denied the motion.[102]  Nothing in Judge Mehalchick's analysis nor my adoption of the report and recommendation could support an inference that SCI-Huntingdon is unconstitutionally overcrowded.

Even assuming, *arguendo*, that Plaintiffs' proffered evidence would be sufficient for a reasonable finder of fact to conclude that SCI-Huntingdon's inmate population exceeded its capacity, this fact alone would not be sufficient to establish a violation of the Eighth Amendment.  A prison's inmate population exceeding its intended capacity is not by itself sufficient to violate the Eighth Amendment.[103]

---

[99]  *See Tillery*, 907 F.2d at 418.

[100]  *Molina*, 2021 WL 4450016, at *1.

[101]  *Id.* at *1-3.

[102]  *Molina*, 2021 WL 4439486, at *1.

[103]  *See Rhodes v. Chapman*, 452 U.S. 337, 348 (1981) (stating that prison housing 38% more inmates than its design capacity was not sufficient to establish Eighth Amendment violation).

Thus, because Plaintiffs have not produced sufficient evidence for their overcrowding claim to go to trial, I will grant Defendants' motion for summary judgment with respect to that claim.

Plaintiffs' understaffing claim fares no better.  Plaintiffs assert that understaffing in SCI-Huntingdon is "self-evident" based on the number of fights and assaults that occur in SCI-Huntingdon, the declarations from SCI-Huntingdon inmates, and the fact that Plaintiffs filed grievances complaining about understaffing.[104]

I disagree.  Plaintiffs' attached declarations provide nothing more than a single conclusory assertion of understaffing,[105] there is no evidence indicating that the number of fights and assaults in the prison is caused by understaffing,[106] and the fact that Plaintiffs grieved the understaffing claim is not evidence of the truth of the claim.  I will therefore grant summary judgment with respect to this claim.

### D.    Retaliation Claims

Plaintiffs bring two retaliation claims in this case, both arising from alleged retaliation against Plaintiff Butler.  In Count 8 of the complaint, Plaintiffs allege that Defendants Wakefield and Stratton retaliated against Butler by forging and backdating a grievance withdrawal form in his name.[107]  In Count 9, Plaintiffs

---

[104]  Doc. 124 at 24.
[105]  *See* Doc. 120-3 at 21 (declaration of Jeremey Melvin) ("The understaffing issue is a bad pairing for overcrowding that only compounds the issues.");
[106]  *See* Doc. 122-1 at 21.
[107]  Doc. 1 at 41-42.

allege that Defendants Kauffman, Reed, Emigh, and Eberling retaliated against Butler by conducting a non-random search of his cell.[108]

A plaintiff alleging retaliation under 42 U.S.C. § 1983 must establish that (1) he engaged in constitutionally protected conduct; (2) the defendant took retaliatory action against the plaintiff that was sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) there was a causal connection between the plaintiff's protected conduct and the defendant's retaliatory action.[109] Causation may be established by showing either an unusually suggestive temporal proximity between the plaintiff's protected conduct and the defendant's allegedly retaliatory action or a pattern of antagonism coupled with timing.[110]  Causation may also be implied by "the record as a whole."[111]

Plaintiffs' retaliatory grievance withdrawal claim arises from the grievance Butler filed on April 3, 2019 complaining that someone had filled in additional bubbles on his prison commissary sheet.[112]  After Defendant Wakefield allowed Butler to examine the relevant commissary sheet, the underlying grievance was

---

[108]  Doc. 1 at 42.  Eberling was previously dismissed from this case.  *See* Doc. 18 at 4.

[109]  *Javitz v. Cty. of Luzerne*, 940 F.3d 858, 863 (3d Cir. 2019).

[110]  *Dondero v. Lower Milford Twp.*, 5 F.4th 355, 361-62 (3d Cir. 2021) (citing *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007)).

[111]  *Id.* (citing *DeFlaminis*, 480 F.3d at 267).

[112]  Doc. 95 ¶ 28; Doc. 123 ¶ 28; Doc. 96-5 at 1.

withdrawn.[113]  The grievance was subsequently reinstated at Butler's request and
pursued through all stages of administrative review.[114]

Defendants argue that they are entitled to summary judgment as to the
grievance withdrawal claim.[115]  Defendants assert that Plaintiffs cannot establish
retaliation with respect to the withdrawal of the grievance and that Plaintiffs have
not brought any claims with respect to the underlying issue of whether Defendants
tampered with the original commissary sheet.[116]  Plaintiffs argue to the contrary
that there is sufficient evidence for the claim to go to trial.[117]

I agree with Defendants that Plaintiffs did not raise any claims with respect
to the alleged tampering with Butler's commissary sheet.  Count 8 of Plaintiffs'
complaint is clearly limited to the alleged forgery of a grievance withdrawal form
and does not allege tampering with a commissary sheet.[118]  As for the merits of the
grievance withdrawal claim, I find that Plaintiffs have not produced sufficient
evidence of retaliation for the claim to go to trial.  Specifically, there is no
evidence that Defendants' alleged act of withdrawing Butler's grievance was
sufficient to deter a person of ordinary firmness from exercising his constitutional
rights, as it is undisputed that immediately after the grievance was withdrawn

---

[113]  Doc. 95 ¶¶ 29-31; Doc. 123 ¶¶ 29-31.
[114]  Doc. 95 ¶¶ 31-32; Doc. 123 ¶ 31-32.
[115]  Doc. 97 at 15-18.
[116]  *Id.*
[117]  Doc. 124 at 28-30.
[118]  *See* Doc. 1 at 41-42.

Butler requested that it be reinstated, that his request was granted, and that he subsequently pursued the grievance through all stages of administrative review.[119] Accordingly, I will grant summary judgment as to this claim.[120]

Turning to the retaliatory search claim raised in Count 9 of the complaint, Defendants do not raise any summary judgment arguments as to the merits of this claim.[121]  Instead, they assert that "[t]here is no Count IX claim in the complaint."[122]  Defendants' assertion appears to be based on the fact that the complaint was written with a typewriter but that the heading "Count 9 Violation of First and Eighth Amendment" was written in pen.[123]

I reject Defendants' contention that the complaint does not contain a Count 9.  The header for Count 9 is clearly legible and prominently displayed on page 42 of the complaint, and the complaint clearly sets out the factual allegations and legal theories on which the count is based.[124]  I will not disregard the count because of the trivial inconsistency of the header being written in pen as opposed to being typewritten.  Having reached this conclusion, I am bound to deny the current motion for summary judgment as to the retaliatory search claim because

---

[119]  Doc. 95 ¶¶ 31-32; Doc. 123 ¶¶ 31-32.
[120]  Defendants also seek summary judgment to the extent that Plaintiff attempts to raise an access to courts claim.  Doc. 97 at 17-18.  Plaintiffs concede that they did not intend to bring an access to courts claim.  Doc. 124 at 30.  I will thus not address this issue any further.
[121]  *See* Doc. 124.
[122]  *Id.* at 3.
[123]  *See* Doc. 1 at 42.
[124]  *See id.*

Defendants have not raised any summary judgment arguments with respect to the claim.[125]

Based on my review of the retaliatory search claim, however, it appears to me that the complaint fails to state a retaliation claim upon which relief may be granted because it does not allege a causal connection between Butler's allegedly protected conduct and Defendants' allegedly retaliatory actions.[126]  Similarly, my review of the record suggests that Plaintiffs do not have any evidence from which a reasonable finder of fact could find a causal connection.  Accordingly, I hereby provide notice of my intention to consider granting summary judgment to Defendants on this issue *sua sponte*.[127]  I will give Plaintiffs an opportunity to come forward with all of the evidence they have in support of their retaliatory search claim.[128]  A schedule for the submission of evidence will be imposed in the Order accompanying this Memorandum Opinion.

### E.    State Law Claims

Defendants seek summary judgment as to Plaintiffs' state law claims for breach of contract and "breach of duty."[129]  With respect to the contract claim,

---

[125] *See* Doc. 97.

[126] *See* Doc. 1 at 25-27, 42.

[127] *See* Fed. R. Civ. P. 56(f); *Celotex*, 477 U.S. at 326; *Lee v. Sixth Mt. Zion Baptist Church of Pittsburgh*, 903 F.3d 113, 118 (3d Cir. 2018); *Gibson v. Mayor & Council of City of Wilmington*, 355 F.3d 215, 222-25 (3d Cir. 2004).

[128] *See In re. SemCrude L.P.*, 864 F.3d 280, 296 (3d Cir. 2017); *Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 280 (3d Cir. 2010).

[129] Doc. 97 at 19.

Defendants argue that they are entitled to summary judgment because the only contract allegedly breached is the DOC Code of Ethics, which is not a contract.[130] Defendants also argue that even if the Code of Ethics were considered a contract, Plaintiffs are not a party to it and any claim for breach of the contract would have to be brought before the Pennsylvania Board of Claims and not this Court.[131] Plaintiffs argue in response that by signing the Code of Ethics and agreeing to abide by it, Defendants "entered themselves in to a 'unilateral contract' that obligates them to abide by it."[132]

I will grant the motion for summary judgment with respect to the breach of contract claim. Assuming, *arguendo*, that the Code of Ethics can qualify as a contract under Pennsylvania law, there is still no evidence in the record indicating that Plaintiffs are parties to the contract. Plaintiffs do not directly address whether they are parties to the contract in their brief, but their argument that the Code of Ethics is a "unilateral contract" appears to be an argument that they do not need to be parties to the contract to be able to enforce its provisions.[133]

Plaintiffs' argument misconstrues the definition of a unilateral contract. A "unilateral contract" is not a contract that binds only one party; it is a contract

---

[130] *Id.*

[131] *Id.*

[132] Doc. 124 at 32.

[133] *See id.* (arguing that Defendants "have entered themselves in to a 'unilateral contract' that obligates them to abide by it . . . [s]o according to the contract that all defendants read and signed, they do owe a duty to prisoners if the contract they signed says so").

formed by only one promise.[134]  Thus, a unilateral contract is formed "when one party makes a promise in exchange for the other party's act or performance."[135] The factual situation in this case plainly does not show the existence of a unilateral contract.

Accordingly, because there is no evidence in the record from which a reasonable finder of fact could conclude that the Plaintiffs are parties to the Code of Ethics, I will grant summary judgment to Defendants as to the breach of contract claim.  I will similarly grant summary judgment to the extent that the complaint attempts to raise a claim for "breach of duty."[136]  The complaint does not state a separate legal theory on which the "breach of duty" claim is based, so the claim appears to also seek relief on a breach of contract theory.  As noted above, nothing in the record indicates that Plaintiffs are parties to any relevant contract, so summary judgment is appropriate with respect to the breach of duty claim.

I will also grant summary judgment as to Plaintiffs' "Neglect to Prevent Deterrence from Violation of Eighth Amendment" claim, which Defendants characterize as a state law claim.[137]  I have thoroughly addressed in this opinion why summary judgment is warranted on Plaintiffs' Eighth Amendment claims, and

---

[134]  *Giant Eagle, Inc. v. C.I.R.*, 822 F.3d 666, 673 (3d Cir. 2016).
[135]  *Id.*
[136]  *See* Doc. 1 at 43.
[137]  *See* Doc. 1 at 36; Doc. 97 at 19.

summary judgment is likewise warranted as to this derivative Eighth Amendment claim.

### F.    Personal Involvement

Finally, a number of Defendants seek summary judgment for Plaintiffs' failure to establish their personal involvement.[138]  These arguments are now moot. I have already granted summary judgment with respect to every claim other than Butler's retaliatory cell search claim.  Defendants Kauffman, Reed, Emigh, and Eberling[139] are the only Defendants named with respect to the retaliatory search claim, and Defendants do not raise a personal involvement argument with respect to those Defendants.[140]  Accordingly, I will not address the issue of personal involvement further.

## V.    CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment will be granted as to all claims other than the retaliatory cell search claim raised in Count 9 of the complaint.  As a result of this ruling, all Defendants other than Kauffman, Reed, and Emigh will be granted summary judgment, and Plaintiff Melvin will be terminated from the case.  I will consider granting summary judgment as to the retaliatory cell search claim *sua sponte*, and the parties will be given an opportunity to respond on this issue.

---

[138]  Doc. 97 at 19-22.
[139]  Eberling was previously dismissed from this case.  *See* Doc. 18 at 4.
[140]  *See* Doc. 1 at 42.

An appropriate Order follows.

BY THE COURT:

<u>*s/ Matthew W. Brann*</u>
Matthew W. Brann
Chief United States District Judge