### IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SHARIFF BUTLER and
JEREMEY MELVIN,

        Plaintiffs,

    v.

KEVIN KAUFFMAN, *et al.*,

        Defendants.

No. 4:19-CV-02171

(Chief Judge Brann)

## MEMORANDUM OPINION

**MAY 5, 2023**

In this prisoner civil rights case, *pro se* Plaintiffs Shariff Butler ("Butler")

and Jeremey Melvin ("Melvin"), who are incarcerated in the State Correctional

Institution-Huntingdon ("SCI-Huntingdon"), have alleged various civil rights

violations by SCI-Huntingdon officials. All of Plaintiff's claims have been either

dismissed or terminated on summary judgment in Defendants' favor, with the most

recent judgment occurring on March 22, 2023, when I *sua sponte* granted

Defendants summary judgment on the sole remaining retaliatory cell search claim.

Presently before me is Plaintiffs' motion to alter or amend judgment, which

seeks to reopen this case based on a litany of errors purportedly made by the Court

over the last three and a half years. I find that none of Plaintiffs' arguments to alter

or amend judgment have merit and I will deny the motion on that basis.

## I.    BACKGROUND

Plaintiffs initiated this case through the filing of a complaint under 42 U.S.C. § 1983 on December 15, 2019, which the Court received and docketed on December 20, 2019.[1]  The complaint raises civil rights claims arising from (1) SCI-Huntingdon's purported refusal to grant Plaintiffs single-cell status, (2) SCI-Huntingdon's alleged failure to mitigate fire safety risks, (3) SCI-Huntingdon's alleged denial of recreation time and time in the prison yard, (4) SCI-Huntingdon's allegedly inadequate ventilation system, (5) alleged overcrowding and understaffing in SCI-Huntingdon, (6) an alleged infestation of vermin in SCI-Huntingdon, and (7) alleged retaliation against Plaintiff Butler.[2]  The complaint raises claims for violation of the First and Eighth Amendments as well as state law claims for breach of contract and "breach of duty."[3]

I dismissed the complaint in part on September 2, 2020.[4]  Specifically, I dismissed all claims against Defendants Wetzel, Moore Smeal, Roberts, Kashmere, Bickell, Wenerowicz, Varner, Moore, Oliver, Thomas, Brumbaugh, Eberling, Harker, and Barr for Plaintiffs' failure to allege their personal involvement and dismissed Plaintiffs' claims relating to Butler's single-cell status as untimely.[5]  I

---

[1]    Doc. 1.
[2]    *Id.*
[3]    *Id.*
[4]    Doc. 18.
[5]    *Id.*

otherwise allowed the complaint to proceed and ordered service of process as to

the remaining Defendants.  Plaintiffs appealed my partial dismissal order to the

United States Court of Appeals for the Third Circuit.[6]  The Third Circuit dismissed

the appeal for lack of appellate jurisdiction on February 23, 2021.[7]  Defendants

then answered the complaint on May 7, 2021.[8]

Plaintiffs filed an amended complaint without leave of court or Defendants'

consent on August 2, 2021.[9]  I struck the amended complaint from the record for

Plaintiffs' failure to comply with Federal Rule of Civil Procedure 15 on September

20, 2021.[10]  Defendants moved for summary judgment on January 20, 2022, after

the close of discovery.[11]

I granted the motion for summary judgment as to all claims and Defendants

with the exception of Butler's retaliatory cell search claim against Defendants

Kauffman, Reed, and Emigh on July 27, 2022.[12]  In doing so, I announced my

intention to consider granting summary judgment to the remaining Defendants as

to this claim because it appeared that the complaint failed to state a retaliatory cell

search claim upon which relief could be granted and because there did not appear

---

[6]   Doc. 23.
[7]   Doc. 31.
[8]   Doc. 38.     .
[9]   Doc. 42.
[10]  Doc. 64.
[11]  Doc. 94.
[12]  Docs. 134-35.

to be any evidence of a causal connection between Butler's allegedly protected conduct and Defendants' allegedly retaliatory actions.[13]  I directed Butler to submit all evidence that he had in support of his retaliatory cell search claim.[14]  Butler timely responded and submitted evidence to the Court on August 26, 2022.[15]  Upon consideration of that evidence, I granted summary judgment to the Defendants on the retaliatory cell search claim on March 22, 2023.[16]  The instant motion to alter or amend judgment followed on April 21, 2023.[17]

## II.   STANDARD OF REVIEW

To properly support a motion to alter or amend a judgment, often referred to as a motion for reconsideration, a party must demonstrate "at least one of the following: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice."[18]  In reviewing for clear error, reconsideration is warranted only if the "[C]ourt is left with the definite and firm conviction that a mistake has been committed."[19]  Thus, to warrant reconsideration, the moving party "must show more than mere

---

[13]   *See* Doc. 134 at 26; Doc. 135 at 2.
[14]   *Id.*
[15]   Doc. 141.
[16]   Docs.
[17]   Doc. 168.
[18]   *In re Vehicle Carrier Servs. Antitrust Litig.*, 846 F.3d 71, 87 (3d Cir. 2017) (cleaned up).
[19]   *Prusky v. ReliaStar Life Ins. Co.*, 532 F.3d 252, 258 (3d Cir. 2008) (internal quotation marks omitted).

disagreement with the earlier ruling" and must show that the court "committed a

direct, obvious, or observable error, and one that is of at least some importance to

the larger proceedings."[20]

Motions for reconsideration "cannot be used to reargue issues that the court

has already considered and disposed of."[21]  Additionally, a motion for

reconsideration "may not be used to present a new legal theory for the first time"

or "to raise new arguments that could have been made in support of the original

motion."[22]

## III.   ANALYSIS

I will address Plaintiffs' arguments for reconsideration *seriatim*.  Plaintiffs'

first argument arises from three pages that are missing from one of their summary

judgment exhibits.[23]  The exhibit, the Pennsylvania Department of Corrections'

Code of Ethics for DOC employees, was cited by Plaintiffs as a "unilateral

contract" that gives rise to their state law breach of contract and "breach of duty"

---

[20]  *In re Energy Future Holdings Corp.*, 904 F.3d 298, 312 (3d Cir. 2018) (cleaned up).

[21]  *McSparren v. Pennsylvania*, 289 F. Supp. 3d 616, 621 (M.D. Pa. 2018) (citing *Blanchard v. Gallick*, No. 1:09-CV-01875, 2011 WL 1878226 at *1 (M.D. Pa. May 17, 2011)).

[22]  *MMG Ins. Co. v. Guiro, Inc.*, 432 F. Supp. 3d 471, 474 (M.D. PA. 2020) (citing *Vaidya Xerox Corp.*, No. 97-CV-00547, 1997 WL 732464, *2 (E.D. Pa. Nov. 25, 1997)).

[23]  Doc. 169 at 7-10.  The relevant exhibit is docketed at Doc. 122-1.  It appears from the record that the pages in question were not scanned into the Court's electronic system after they were received in the mail from Plaintiffs due to the Clerk's Office employee who received the documents erroneously failing to realize that the document was printed double sided.  The original copy of the document was not retained by the Court such that this scanning oversight could be corrected.

claims.[24]  I granted summary judgment to Defendants on both claims on July 27,

2022, noting that Plaintiffs' argument misconstrued the definition of a unilateral

contract and appeared to assert that they were entitled to enforcement of the

contract even if they were not parties to the contract.[25]  I explained that contrary to

Plaintiffs' argument a unilateral contract was not a contract that bound only one

party, but rather a contract formed by only one promise.[26]  Thus, I granted

summary judgment on the breach of contract and breach of duty claims because,

even assuming *arguendo* that the Code of Ethics was a contract, Plaintiffs had not

produced any evidence to show that they were parties to the contract.[27]

Plaintiffs argue that reconsideration is warranted because the missing pages

of their exhibit indicate that DOC correctional officers are required to read, sign,

and comply with the Code of Ethics.[28]  This argument is without merit.  A

requirement that correctional officers were required to read, sign, and comply with

the Code of Ethics at most indicates that correctional officers are parties to the

Code of Ethics as a contract; it does not establish in any way that *Plaintiffs* were

parties to the contract.

---

[24]   *See* Doc. 124 at 32.
[25]   Doc. 134 at 27-28.
[26]   *Id.*
[27]   *Id.* at 28.
[28]   Doc. 169 at 9.

Plaintiffs' second argument is that the missing pages of Doc. 122-1 also support reconsideration of the Court's Memorandum and Order granting summary judgment to Defendant Kauffman on the retaliatory cell search claim.[29]  In the relevant portion of the Memorandum Opinion, I found that Kauffman was entitled to summary judgment because the only allegation against Kauffman was that he denied Butler's grievance about the allegedly retaliatory cell search, which was not a sufficiently adverse action to support a retaliation claim.[30]  Plaintiffs argue that the retaliatory cell search claim against Kauffman is not based on his actions in denying Butler's grievance, but rather Kauffman's refusal to review video evidence from the incident.[31]  Plaintiffs argue that the missing pages of the Code of Ethics would support this claim because it would show that Kauffman had an affirmative duty to review the video evidence under the Code of Ethics.[32]

This argument is without merit.  Plaintiffs' complaint makes no allegation that Kauffman refused to review video evidence.  To the contrary, the complaint alleges that Kauffman denied Butler's grievance after "(allegedly) reviewing camera footage of the event."[33]  The obtuse and indirect parenthetical usage of "(allegedly)" was not sufficient to put Defendants or the Court on notice that

---

[29]   *Id.* at 10-12.
[30]   Doc. 159 at 9.
[31]   Doc. 169 at 11.
[32]   *Id.*
[33]   *See* Doc. 1 ¶ 283.

Plaintiffs were alleging that Kauffman refused to review video evidence. Accordingly, because Plaintiffs' second argument for reconsideration is based on a claim that was not properly pleaded in Plaintiffs' complaint, I will deny the argument.

Plaintiffs' third argument is that I did not have the authority to *sua sponte* grant summary judgment to Defendants on the retaliatory cell search claim.[34] This argument is meritless. District courts may grant summary judgment *sua sponte* as long as they have provided notice of the intention to do so and an opportunity to respond.[35] That is exactly what I did.[36]

Plaintiffs' fourth argument is that I erred by citing the summary judgment standards enumerated in *Anderson v. Liberty Lobby, Inc.*,[37] in granting summary judgment.[38] This argument is completely frivolous. *Anderson* is binding Supreme Court precedent, and as any first-year law student can attest, it is a foundational precedent for understanding summary judgment proceedings under Federal Rule of Civil Procedure 56.

Plaintiffs' fifth argument is that I erred in concluding that Plaintiffs' yard, recreation, ventilation, and vermin claims were untimely. In the relevant portion of

---

[34]   Doc. 169 at 15-16.
[35]   *See, e.g., Lee v. Sixth Mt. Zion Baptist Church of Pittsburgh*, 903 F.3d 113, 118 (3d Cir. 2018).
[36]   *See* Doc. 134 at 26 (announcing intention to grant summary judgment *sua sponte* and directing plaintiffs to respond to and submit relevant evidence); Doc. 135 at 2 (same).
[37]   477 U.S. 242 (1986).
[38]   Doc. 169 at 17-18.

my opinion, I found that the claims were untimely because Plaintiffs were aware of

the conditions giving rise to the claims since 2003 and 2007 but did not bring the

claims until 2019.[39]  I acknowledged Plaintiffs' reliance on the continuing

violations doctrine, but found this reliance misplaced because the doctrine does not

apply when the facts giving rise to the claim have a degree of permanence

triggering the plaintiffs' duty to assert his rights or when the plaintiff is aware of

his injury at the time it occurs, both conditions that I found were present in the

instant case.[40]  Plaintiffs argue, essentially, that these rules of law were overruled

by the statement in *Randall v. City of Philadelphia*, that the continuing violations

doctrine applies "when a defendant's conduct is part of a continuing practice."[41]

This argument is also meritless.  *Randall* does not contradict the cases I

relied on—*Wisniewski v. Fisher*[42] and *Montanez v. Sec'y Pa. Dep't of Corrs.*[43]  All

three cases define the continuing violations doctrine in an indistinguishable manner

and nothing in *Randall* indicates an intention to question or overrule *Wisiewsnki or*

*Montanez*.[44]  *Wisniewski* and *Montanez* address exceptions to the doctrine that

---

[39]  Doc. 134 at 11-12.
[40]  *Id.* at 12.
[41]  919 F.3d 196, 198-99 (3d Cir. 2019); *see also* Doc. 169 at 20 (arguing that the court's logic "can no longer stand" because it is "contradict[ed]" by *Randall*).
[42]  857 F.3d 152 (3d Cir. 2017).
[43]  773 F.3d 472 (3d Cir. 2014).
[44]  *See Randall*, 919 F.3d at 198 (stating that the continuing violations doctrine "postpone[s] the running of the statute of limitations . . . when a defendant's conduct is part of a continuing practice"); *Wisniewski*, 857 F.3d at 158 (noting plaintiff's argument that the continuing violations doctrine rendered his claims timely because "he suffered a continuing wrong"); *Montanez*, 773 F.3d at 481 (noting that under the continuing violations doctrine, "an action is

were not at issue in *Randall*.[45]  The fact that *Randall* did not discuss those

exceptions does not imply that it overruled the other cases; it simply indicates that

the exceptions were not at issue.

Moreover, even if *Randall* did contradict *Wisniewski* and *Montanez*, it

cannot overrule those cases because all three were decided by panels of the Third

Circuit.  A panel of the Third Circuit cannot overrule the decision of an earlier

panel of the Third Circuit; the earlier decision can only be overruled by the

Supreme Court or by the Third Circuit sitting *en banc*.[46]

Plaintiffs' sixth argument is that I erred in finding that Plaintiff Melvin

lacked standing to pursue his single cell claim because I relied on *Transunion LLC

v. Ramirez*[47] for a general statement on the law governing standing.[48]  Plaintiffs

assert that the standard cited from *Transunion* is "not found and/or not located at

the case citing specified" and argue that the Court therefore committed a clear error

of law by citing *Transunion*.[49]

---

timely so long as the last act evidencing the continuing practice falls within the limitations period").

[45]  *See Wisniewski*, 857 F.3d at 158 (noting that doctrine did not apply because the defendants' actions "had a degree of permanence" that should have triggered plaintiff's awareness of duty to assert his rights (quoting *Cowell v. Palmer Twp.*, 263 F.3d 286, 292 (3d Cir. 2001))); *Montanez*, 773 F.3d at 481 ("[T]he continuing violation doctrine does not apply when the plaintiff 'is aware of the injury at the time it occurred.'" (quoting *Morganroth & Morganroth v. Norris, McLaughlin &Marcus, P.C.*, 331 F.3d 406, 417 n.6 (3d Cir. 2003))).

[46]  *See* Third Circuit Internal Operating Procedure 9.1; *Pareja v. Att'y Gen. of U.S.*, 615 F.3d 180, 190 (3d Cir. 2010).

[47]  594 U.S. __, 141 S. Ct. 2190 (2021).

[48]  *See* Doc. 169 at 21.

[49]  *Id.*

This argument is frivolous.  The Court's citation to *Transunion* in the July

27, 2022 Memorandum Opinion contained a minor typographical error; the rule of

law cited from *Transunion* appears on page 2203 in the Supreme Court Reporter

pagination rather than page 2204 as cited by the Court.[50]  Plaintiffs are aware that

the rule of law I cited appears on page 2203—they cite page 2203 of *Transunion*

for the very same proposition on the very next page of their brief—but they

nevertheless devote four pages of their brief to argue that I somehow misapplied

*Transunion* by citing page 2204 of the opinion rather than page 2203.   I will not

disturb a judgment issued nearly a year ago based on a minor typographical error.

Plaintiffs' seventh argument is that Melvin did have standing to pursue his

single cell claim based on principles enumerated in *Transunion*.[51]  This argument

could have been raised prior to my original ruling and I will accordingly not

consider it here.[52]

Plaintiffs' eighth argument is that I erred in granting summary judgment on

their fire safety claim based on a finding that Plaintiffs failed to present any

evidence that the alleged fire safety hazards created a substantial risk of serious

---

[50]   *See* Doc. 134 at 14 n.71; *Transunion*, 141 S. Ct. at 2203 ("To establish . . . .standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief.").

[51]   Doc. 169 at 22-24.

[52]   *See MMG Ins. Co.*, 432 F. Supp. 3d at 474 ("A motion for reconsideration may not be used to present a new legal theory for the first time.").

harm.[53]  Plaintiffs argue that I abused my discretion by failing to cite any legal

authorities in the paragraph in which I reached this conclusion.[54]

This argument is frivolous.  It is hornbook law that a plaintiff opposing a

motion for summary judgment must produce evidence in support of his claims and

cannot rely simply on allegations to defeat the motion.[55]  Plaintiffs' editorial

opinions as to how frequently I should cite this law in my summary judgment

rulings is not sufficient to grant reconsideration.

Plaintiffs' ninth argument takes issue with my statement regarding the

district court and circuit court opinions in *Tillery v. Owens*.[56]  In the relevant

portion of the opinion, I stated the following:

> Instead of offering expert testimony or other evidence as to what fire
> safety measures SCI-Huntingdon should implement, Plaintiffs appear
> to rely entirely on the findings of fact by the district court and affirmed
> by the circuit court in *Tillery v. Owens*, where the court found that
> numerous fire safety hazards violated the Eighth Amendment.  That
> case, however, concerned the conditions of confinement in the State
> Correctional Institution-Pittsburgh ("SCI-Pittsburgh") in the late 1980s
> and early 1990s, and the court relied heavily on the testimony of an
> expert witness in reaching its factual conclusions.  Findings of fact from
> a different case concerning the conditions of confinement in a different
> prison decades before the facts of this case cannot simply be
> transplanted to the present case, and nothing in the Western District or
> Third Circuit's opinions in *Tillery* create *per se* rules of
> constitutionality that must be followed in this case.  Accordingly,
> because Plaintiffs have offered no evidence of a substantial risk of

---

[53]   Doc. 169 at 24.
[54]   *Id.*
[55]   *See, e.g., Anderson*, 477 U.S. at 248-49.
[56]   *See Tillery v. Owens*, 719 F. Supp. 1256 (W.D. Pa. Aug. 15, 1989); *Tillery v. Owens*, 907 F.2d 418 (3d Cir. 1990).

serious harm, I will grant the motion for summary judgment with respect to the fire safety claim.[57]

Plaintiffs argue that this passage implies that no litigants may ever cite case law in support of their position.[58]  They additionally argue they were not required to produce expert testimony at the summary judgment stage.[59]  There is no merit to these arguments.  The purpose of citing case law is to provide controlling rules of law to the court or to persuade the court by drawing attention to factually analogous cases; case law cannot be used to establish facts.  My ruling simply stated that the existence of facts in *Tillery* did not establish (or even imply) that the same facts existed in the present case.  *Tillery* could support Plaintiffs' position as a factually analogous case if they had introduced any factual support for their claim, but it cannot be imported to establish the facts in the first place.

As for Plaintiffs' argument regarding expert testimony, they are correct that they are not required to produce expert testimony at the summary judgment stage, but they still must produce some kind of evidence in support of their claim.[60]  My reference to expert testimony was simply an example to indicate Plaintiffs' lack of evidence in support of their claim.[61]

---

[57]   Doc. 134 at 16-17.
[58]   Doc. 169 at 25.
[59]   *Id.*
[60]   *See Anderson*, 477 U.S. at 248-49.
[61]   *See* Doc. 134 at 16 ("Instead of offering expert testimony *or other evidence* as to what fire safety measures SCI-Huntingdon should implement Plaintiffs appear to rely entirely on the findings of fact by the district court and affirmed by the circuit court in *Tillery v. Owens . . . .*" (emphasis added)).

Plaintiffs could have defeated summary judgment by producing expert testimony or some other kind of evidence to support their claim, but they did not do so.  Reconsideration is accordingly not warranted.

Plaintiffs' tenth and eleventh arguments state that I erred in granting summary judgment on their overcrowding and retaliation claims because contrary to my opinion, the evidence they cited is sufficient to defeat summary judgment.[62] I already considered this evidence and concluded that it was not sufficient to defeat summary judgment; I will not reconsider the evidence here.[63]

Plaintiffs' twelfth argument is that I erred in my definition of a unilateral contract with respect to Plaintiffs' breach of contract and breach of duty claims.[64] This argument is immaterial because, as I noted above and in my original opinion, Plaintiffs have not produced any evidence to show that they were parties to the contract even assuming that a unilateral contract existed.

Plaintiffs' thirteenth argument is that I erred in dismissing Butler's single cell claim as untimely.[65]  Plaintiffs argue that the claim is timely because the limitations period was tolled while Butler pursued administrative remedies.[66] Plaintiffs accordingly argue they had two years from the date Butler completed the

---

[62]  *See* Doc. 169 at 26-30.
[63]  *See McSparren*, 289 F. Supp. 3d at 621 (noting that motions for reconsideration "cannot be used to reargue issues that the court has already considered and disposed of.").
[64]  Doc. 169 at 30-31.
[65]  Doc. 169 at 31-32.
[66]  *Id.* at 32.

administrative remedy process—December 19, 2017—to file the claim.[67]  Thus,

Plaintiffs argue, the claim is timely because it was filed on December 15, 2019, the

date they submitted their original complaint to prison officials for mailing.[68]

Plaintiffs are correct that the two-year limitations period for the filing of a

§ 1983 action is tolled while plaintiffs attempt to exhaust administrative

remedies.[69]  But Plaintiffs' argument misconstrues the effect of tolling a limitations

period: tolling a limitations period simply pauses it or holds it in abeyance; it does

not restart the limitations period from zero.[70]  Plaintiffs' complaint indicates that

Butler was aware of the facts giving rise to his single cell claim no later than

August 6, 2017,[71] but did not file a grievance related to those facts until September

20, 2017.[72]  Thus, 45 days had already elapsed towards the end of the limitations

period at the time Butler filed his grievance, meaning his complaint needed to be

filed within 320 days of December 19, 2017, or no later than November 4, 2019, to

be considered timely.

---

[67]  *Id.*
[68]  *See id.*  Plaintiffs state the complaint was filed on December 13, 2019, but the complaint indicates it was filed December 15, 2019.  *See* Doc. 1 at 48.
[69]  *See Pearson v. Sec'y Dept. of Corrs.*, 775 F.3d 598, 603 (3d Cir. 2015).
[70]  *Cf. Artis v. District of Columbia*, 583 U.S. __, 138 S. Ct. 594, 601 (2018) ("Ordinarily, 'tolled,' in the context of a time prescription like § 1367(d), means that the limitations period is suspended (stops running) while the claim is *sub judice* elsewhere, then starts running again when the tolling period ends, picking up where it left off."); *Lozano v. Montoya Alvarez*, 572 U.S. 1, 10 (2014) (noting that equitable tolling doctrine "pauses the running of" a statute of limitations).
[71]  *See* Doc. 1 ¶ 35.
[72]  *See id.* ¶ 107.

The claim is therefore untimely because Plaintiffs' complaint was not filed until December 15, 2019.  I will not reconsider my dismissal of the single cell claim as untimely.

Plaintiffs' fourteenth and final argument is that I erred by denying leave to amend in two orders issued in 2021.[73]  In the first order, issued September 20, 2021, I deemed Plaintiffs' request for leave to amend their complaint withdrawn for failure to file a supporting brief as required by Local Rule 7.5.[74]  In the second order, issued November 19, 2021, I denied Plaintiffs' motion for extension of time to file a brief in support of the motion, finding that Plaintiffs failed to establish good cause for the requested relief.[75]  I acknowledged Plaintiffs' argument that the conditions of their confinement caused by the COVID-19 pandemic constituted excusable neglect for the initial failure to file a supporting brief, but rejected the argument, noting that Plaintiffs did not seek an extension of time until approximately one month after I deemed the motion withdrawn and that they filed three other motions in the interim.[76]  "COVID-19," I reasoned, "cannot explain [Plaintiffs'] lack of urgency given the fact that Plaintiffs were able to file three other motions in the interim."[77]  Thus, because Plaintiffs had not acted with

---

[73]   Doc. 169 at 32-33.
[74]   Doc. 64 at 1-2.
[75]   Doc. 82 at 2-3.
[76]   *Id.* at 3.
[77]   *Id.*

sufficient diligence, I found that they failed to establish good cause for the

requested extension.[78]

Plaintiffs now argue that I gave short shrift to their COVID-19 argument and

that COVID-19 did in fact establish good cause for the requested extension.[79]

Plaintiffs could have provided this more complete argument before my original

ruling, but did not do so.  I will deny reconsideration on that basis.[80]

## IV.   CONCLUSION

For the foregoing reasons, I will deny Plaintiffs' motion to alter or amend

judgment.

An appropriate Order follows.

BY THE COURT:


*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[78]   *Id.*
[79]   *Id.* at 32-33.
[80]   *See MMG Ins. Co.*, 432 F. Supp. 3d at 474